# BALTIMORE FIDELITY WAREHOUSE COMPANY *vs.* CANTON LUMBER COMPANY.

*Statutes: duly passed; legal existence; printed and published
laws; journals of House and Senate; effect of—; recall
of bill from the Governor; amendment and re-
enactment; concurrent action of both houses.
House and Senate Rules. Constitu-
tional requirements for enact-
ment of laws. Enrolled
and engrossed
bills.*

Where an Act has been duly authenticated, and published as
law by authority, the presumption is that all the constitu-
tional solemnities and prerequisites necessary to its valid
enactment have been complied with; and this presumption
exists until the contrary is clearly made to appear.     p. 138

The Journals of the House and Senate are not evidence *per se*
upon which the validity of a statute having the required
authentication can be successfully questioned as to the man-
ner of its enactment, but they are proper sources from which
a Court may acquire information as to whether a statute was
constitutionally passed and whether it is a valid and subsist-
ing law.     p. 139

Three days after the passage of a House bill by the Legisla-
ture, the House was requested by the Senate to return the
bill to it; the bill had been duly enrolled, sealed with the
Great Seal and sent to the Governor, but had not been signed
by him; the House requested the Governor that the bill be
withdrawn and returned for amendment to meet constitu-
tional objections raised by the Attorney-General; the Gov-
ernor returned the bill; on the same day the Senate sent a
message to the House asking for the return of the bill to the
Senate, which message did not set forth the purpose for
which it was to be so returned; it was, however, amended by
the Senate so as to relieve it of the constitutional objections

raised by the Attorney General. The amendment was con-
curred in by the House, and the bill finally passed as amended
by the Senate and enrolled and presented to the Governor
for his approval. *Held,* that these facts constituted a con-
current action on the part of the two branches of the legisla-
ture in asking for the return of the bill from the Governor
and had all the effect of a joint resolution.          p. 147

No provision of the Constitution is violated by the willing
return of a bill in such a case by the Governor to the House
of Delegates, upon its request, supported by the concurrent
action of the Senate.                                  p. 149

Each branch of the Legislature has the power to make its own
rules subject to the constitutional provisions, and may change
and suspend its rules at will; and generally Courts will not
inquire whether such rules have been complied with in the
enactment of the statute.                              p. 149

Rule 36 of the Senate provides when and under what circum-
stances a vote for which a bill is passed may be recon-
sidered; the non-observance of such a rule in no way conflicts
with the constitutional provisions or requirements in rela-
tion to the passage of laws, and no inquiry should be made
by a Court to ascertain whether the Senate in reconsidering
a bill was acting in compliance with the rule or not.
                                                       p. 150

Under the facts of this case where upon inspection of the two
bills, the Court perceived that the enrolled bill which had
been sent to the Governor and the bill as it had been
engrossed for its third reading were identical, *it was held*
that it was immaterial whether the Senate in reconsidering
the vote by which the bill had been previously passed by
that body acted upon the enrolled bill instead of the engrossed
copy; the action of the Senate was in effect a reconsideration
of the vote by which such engrossed bill had been passed,
and must be so considered, and should not be regarded as a
new bill appearing for the first time in the Senate, and,
therefore, did not come under the provision of the Constitu-
tion requiring a bill to be read on three different days in
each house before it can be legally enacted.     pp. 150-151

*Decided May 10th, 1912.*

Appeal from the Circuit Court of Baltimore County (HARLAN, J.), sitting in equity.

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Washington Bowie, Jr.,* for the appellant.

*Chas. E. Siegmund* and *Thomas G. Hayes,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

In this case the appellee filed its bill in the Circuit Court for Baltimore County, in equity, against the appellants, The Baltimore Fidelity Warehouse Company and Edward M. Hammond and E. Lynne Painter, receivers for the Saratoga Improvement Company, to enforce a lien upon the building and property of the Baltimore Fidelity Warehouse Company located in Baltimore County, for materials furnished by the appellee company to the Saratoga Improvement Company, contractor for said building, and used in the erection of the same. The amount of the appellee's claim, as shown by the lien filed with the bill as an exhibit, is $3,286.34.

The appellee bases its right to its lien upon Chapter 52 of the Acts of 1910. This statute provides that "Every building erected and every building repaired, rebuilt or improved to the extent of one-fourth its value in Baltimore City and in any of the counties shall be subject to a lien for the payment of all debts contracted for, work done for, or about the same, and in the counties every such building shall also be subject to a lien for the payment of all debts contracted for, materials furnished for or about the same." *Dunn* v. *Brager,* 116 Md. 242.

As the law stood prior to the passage of this Act, no person, firm or corporation was entitled to the benefit of a mechanics' lien upon any building in Baltimore county for materials furnished for or about the same (except as provided in Section 20 of Article 63 of the Public General Laws, entitled "Mechanics' Liens") unless the contract for furnishing such material was made directly with the owner of such building or his agent. In this case the material was not furnished under a contract with the owner or his agent, but was furnished to the contractor under a contract with him.

The appellants, defendants below, contend that Chapter 52 of the Acts of 1910, under and by virtue of which, as we have said, this lien is claimed, "was not constitutionally passed and is not a valid and subsisting law." The only question before us on this appeal is, was Chapter 52 of the Acts of 1910 constitutionally passed and is it a valid and subsisting law?

The Act here involved is a public statute and appears in the statute book with all the prescribed forms of authentication. This Court has said: "Where an act has been duly authenticated and published as law by authority, the presumption is that all the constitutional solemnities and prerequisites necessary to its valid enactment have been complied with; and this presumption exists until the contrary is clearly made to appear." *Berry* v. *Baltimore & Drum Point R. R. Co.,* 41 Md. 462.

"In several of the State Courts of the highest authority, and in all cases, with but few exceptions, it has been held * * * that it is the right and duty of the Court to go behind the authentication of the statute and to receive evidence such as that furnished by the engrossed bills with endorsements thereon, and the journal of proceedings of the two Houses of the Legislature upon the question of the constitutional enactment of what purports to be a statute." *Berry* v. *Baltimore & Drum Point R. R. Co., supra; Legg* v. *Mayor, etc., of Annapolis,* 42 Md. 223. The Court, however, in

the case of *Berry* v. *Baltimore & Drum Point R. R. Co.*, *supra*, * * * cautiously observed that they did not decide therein that the journals of the two Houses, though required by the Constitution to be kept as records of the proceedings, would be evidence *per se* upon which the validity of a statute having the required authentication could be successfully questioned as to the manner of its enactment, but held that the journals, in connection with other competent evidence upon the subject, could be examined as a means of information to aid in arriving at a correct conclusion as to what was the action of the Legislature on any particular bill before it.

In this case the engrossed and enrolled bills, as well as the journals of the House and Senate, were offered in evidence by the plaintiff in support of the objections urged against the Act that it was not constitutionally passed, and therefore not a valid and subsisting law. Upon the authorities cited and from the information to be gathered from such engrossed and enrolled bills and the said journals of the House and Senate, we think they are a proper source from which the Court may acquire information as to whether the statute was constitutionally passed and is a valid and subsisting law. By them it is shown that the bill originated in the House as Bill No. 129 and was introduced on February 2nd, 1910, and referred to the Committee on Judiciary. On February 10th, the bill was favorably reported by the Committee and read a second time in the House and ordered engrossed for third reading. On February 15th, it was read a third time and passed by yeas and nays. The bill was then sent to the Senate and read the first time in the Senate on February 16th and referred to the Committee on Judicial Proceedings. On March 17th, it was reported favorably to the Senate and read the second time. On March 24th, it was read the third time in the Senate and passed by yeas and nays, and on March 25th, the bill was returned to the House where it was enrolled and "Sealed with the great seal and on March 26th was presented to the Governor for his approval."

On March 28th, the following message of the Senate was read and assented to and sent to the House of Delegates:

"BY THE SENATE.

March 28th, 1910.

*Gentlemen of the House of Delegates:*

We respectfully request, with the concurrence of your Honorable Body, that the House of Delegates return to the Senate Bill No. 129, which bill originated in your Honorable Body.

By order,

MAX WAYS, Secretary."

Upon the same day the following message of the House was read and assented to and sent to the Governor:

"*To His Excellency, Austin L. Crothers,*
    *Governor of Maryland,*
        *Annapolis, Maryland.*

Sir: The House of Delegates respectfully request the withdrawal of Bill No. 129, which bill originated in this House, there being some question as to the constitutionality of the title of said bill, and the Attorney-General having recommended that the title be amended.

Respectfully,

A. J. ALMONEY, Clerk."

On March 28th, as shown by the endorsement upon the enrolled bill sent to the Governor, the bill was returned by him to the House in compliance with its message, and on the same day, March 28th, the House sent to the Senate a message acknowledging the receipt of its message of that day asking for the return of the bill, and with such message it returned the bill. On March 29th, the President laid before the Senate the bill returned by the House, whereupon the vote by which the bill was passed was reconsidered and certain amendments thereto were adopted and the bill passed by yeas and nays as amended. On March 30th, the bill was received in the House from the Senate and the Senate's amendments concurred in and the bill passed by yeas and

nays as amended. The bill was again enrolled and sent to
the Governor and was by him approved on April 1st, 1910.

It is urged by the appellants that the Act was not constitu-
tionally passed and is not a valid and subsisting law for the
following reasons:

First. The bill having been duly passed and presented to
the Governor for signature, was beyond the power of the
Legislature to recall.

Second. Under the constitution the Governor cannot re-
turn a bill except with his veto and objections.

Third. The rules of each House of the Legislature are the
law of that body and cannot be abrogated by express legisla-
tive enactment.

Fourth. There is no provision in the Constitution nor rule
of either House of the Legislature permitting further action
regarding a bill after it has been sent to the Governor except
after his veto.

Fifth. The enrolled copy cannot be considered as other
than a new bill, and the endorsements and journals show
conclusively that it did not pass the Legislature in the
manner pointed out by the Constitution.

We will first consider and discuss the first, second and
fourth reasons urged against the validity of the statute.

The appellants contend that when the bill is presented to
the Governor the jurisdiction and control of the legislative
branch of the government ends and that of the executive
commences, and that the latter then continues until (1st)
the bill is signed, or (2nd) it is vetoed and returned to the
Legislature with the objections of the executive stated so as
to be spread upon the record, or (3rd) the bill becomes a
law by virtue of the provisions of Section 17 of Article 2,
if not either signed or vetoed by the Governor within six
days from the time it is presented to him, unless within
that time its return is prevented by the adjournment of the
Legislature.

In support of its contention the appellants cite the cases
of *Wolfe* v. *McCaull,* 76 Va. 876, and *People* v. *Devlin,* 33

N. Y. 269. In the first of these cases after the bill had been passed by both branches of the General Assembly and presented to the Governor, a joint resolution was introduced in the Senate requesting the Governor to return said bill to the General Assembly, which joint resolution was passed by both branches of the Legslature. In response to this resolution the Governor sent the enrolled bill to the Senate with the following communication: "I hereby return Senate Bill No. 23, entitled An Act to incorporate the Carolina and Virginia Railroad Company," but on the same day he sent to the clerk of the Senate for the return of said bill, and it was returned to him on that day by said clerk and was afterwards delivered by the Governor, along with other bills, to the keeper of the rolls. The keeper of the rolls, however, failed to furnish the superintendent of public printing, for publication, the manuscript of this Act and the petitioners made a formal demand, in writing, upon said keeper of the rolls that he should perform his duties in that regard. But he refused to furnish the said manuscript to the superintendent of public printing, and thus a peremptory writ of mandamus was asked for commanding him to prepare the said Act for publication and to furnish the superintendent of public printing a manuscript of said bill and to cause the same to be published among the Acts passed by the General Assembly.

In the case of *People* v. *Devlin, supra,* after the bill had regularly passed both Houses of the Legislature, the Senate and the Assembly, it was sent to the Governor for his approval. The Assembly thereafter, without the consent of the Senate, sent a message to the Governor asking the return of the bill to the Assembly. This was done by the Governor without the knowledge on his part that it was against the wishes of the Senate. The Assembly on receiving the bill, struck out of its sections and the bill was again sent to the Senate. That branch of the Legislature refused to concur in the amendment and declined to take any further action in relation to it. There were committees of conference ap-

pointed, but there was no further agreement between the Senate and Assembly. The Legislature adjourned on that day and the clerk of Assembly prepared a new engrossment of the section that had been stricken out by the Assembly after its return by the Governor and the bill was again sent to the Governor who signed it.

In the case of *Wolff* v. *McCaull, supra,* the Court held that the return of the bill with the communication from the Governor was not such a return of it as is contemplated by the Constitution, that it was not a veto of the bill. The communication contained no ground for objection and its language negatived the idea that he disapproved the bill, but it was returned in response to a joint resolution of the General Assembly requesting its return. The Court in its opinion then states: "The truth is, the bill was never beyond the Executive control, as shown by the fact that the Governor on the very day of its return to the Senate sent for the bill and it was returned to him by the clerk of the Senate and kept by him until it was placed in the hands of the keeper of the rolls, together with other bills. The mere delivery by the Governor of this bill to the Senate at the request of the General Assembly, was of no effect, but merely an act of courtesy which was of no legal effect, and in contemplation of law the bill never left the Governor's hands until it was placed in the hands of the keeper of the rolls."

The Court then proceeds to discuss the question whether the Legislature by joint resolution had the power to recall the bill from the Governor after it had been passed by both houses and sent to the Governor, and in doing so, said: "This involves the inquiry, *When* does the power of control over a bill passed by both houses cease and determine? There must be a time, in all parliamentary proceedings, when the controlling power of the legislative body comes to an end.

"The object of requiring the possession of the paper must have been for a reconsideration, because no motion to reconsider it is in order unless the paper is before the body in which the motion to reconsider is made (*Jefferson's Manual,*

93.). But in Virginia the rules of both houses of the General Assembly fix the time and mode by which a bill passed may not be reconsidered."

"According to these rules and general practice, a motion to reconsider the same vote cannot be made twice, and if made at all must be made upon the day of the vote or upon one of the two ensuing days. In the case before us a motion to reconsider was made in each house within the proper time and was lost. After this was done and after it was sent to the Governor, the Legislature had no further control over the bill. It was then before the Governor for his action or nonaction and was beyond the control of the Legislature."

In the case from which we have just quoted, after the bill was returned to the Senate, no action was taken thereon—and as held by the Court, under the rules of that body no further action could have been taken—before it was, at the request of the Governor, and while under executive control, returned to him by the clerk of the Senate.

As stated by the Court in its opinion, the return of the bill to the Senate must have been for the purpose of a reconsideration of the vote by which the bill had passed that body. Therefore, if the rule of the Senate prohibiting a reconsideration of the bill after a vote to reconsider the bill had once been taken and lost, was regarded by that body as conclusive, and that it was not in its power to suspend such rule, as the Court seems to hold in its opinion, then the vote by which the bill was passed could not be reconsidered, and thus no further action could be taken upon the bill. Therefore, the only disposition to be made of the bill was to return it to the Governor, as requested by him, which was done, as we have said, on the very day that it was sent to the Senate and while, as the Court has said, it was still under executive control.

It is evident from what is said by the Court in its opinion, that in reaching its decision that the bill, when thereafter signed by the Governor and deposited with the keeper of the rolls, became a valid act, and should have been pub-

lished with the other statutes properly enacted at that session of the General Assembly, it was largely influenced by the fact that when it was returned to the Senate it was, in the opinion of the Court, beyond the power of that body to reconsider the vote by which it was passed.

In the case before us the Governor was asked by the House to return the bill in order that the vote by which it was passed might be reconsidered and that the provisions of it, to which the objection of the Attorney-General had been interposed, could be eliminated therefrom. When the bill was received by the House of Delegates from the Governor it was at once sent to the Senate, where a motion to reconsider was made and carried and the bill so amended that the objectionable features above referred to were eliminated therefrom, and in our opinion no inquiry should be made by the Court to ascertain whether the Senate, in so doing, was acting in compliance with the rule of that body, as no constitutional provision is involved in the non-observance of such rule. The bill was then sent to the House and passed by that body as amended by the Senate. It was then re-enrolled and sealed with the Great Seal and presented to the Governor for his approval, and the same was approved by him and deposited with the clerk of this Court, where it may now be found fully authenticated.

In the case of *People* v. *Devlin, supra,* the Court there said: "This bill had passed both houses and had been sent to the Governor for his approval. The recall by the Assembly was an infringement of parliamentary law. It was an attempt to do alone what, if it could be done at all, required the joint action of both the Senate and Assembly. All subsequent proceedings by the Assembly were irregular and of no effect, and when there was a failure to procure the assent of the Senate to an amendment, it was, I think, the duty of the Assembly to return the bill to the Governor. Failing to do this during the session, the duty devolved on the clerk. The resolve of the Senate that the matter had passed beyond separate control was, I think, clearly right."

That case, it would seem, recognizes the right of the Legislature by a joint action of the two houses to recall from the Governor a bill that had passed both branches of the Legislature and had been sent to the Governor for his approval, but denies the right of either branch of the Legislature, acting without the concurrent action of the other, to recall a bill when so passed.

This case differs widely from the New York case from which we have just quoted. In that case the request made to the Governor for the return of the bill was made by the Assembly against the wishes and consent of the Senate—which it seems was unknown to the Governor, who complied with the request and returned the bill to the Assembly. After its return, the Assembly struck out a section of the bill and then sent it to the Senate and that body refused to concur in the amendment made by the Assembly in striking out such section of the bill, and all efforts thereafter of the two houses of the Legislature to agree upon amendments to be made to the bill proved futile. The Legislature adjourned upon the day that it was sent to the Senate and the clerk of Assembly prepared a new engrossment of the section that had been stricken out by the Assembly after its return by the Governor and the bill was again sent to the Governor who signed it. The Statute thus signed by the Governor was held to be a valid statute.

In this case, after the bill had regularly passed the two houses of the Legislature and had been presented to the Governor for his approval, it was examined by the Attorney-General and by him it was thought that it contained certain provisions that might render the Act, when approved, unconstitutional, and, therefore, suggested that the House ask the Governor to return it in order that such objectionable provisions could be stricken out. This suggestion was adopted by the House and the message heretofore given was sent to the Governor asking for the return of the bill. Upon the same day, whether before or after, or simultaneous therewith, the record does not disclose, the House of Delegates was

asked, by a message from the Senate, to return the bill to the Senate, which was accordingly done on the same day that the message was received by the House; the bill in the meantime having been returned by the Governor to the House of Delegates.

It is true that the request made of the Governor for the return of the bill was not by means of a joint resolution of both branches of the Legislature, but we think from the facts disclosed by the record, that the request was made by the House with the concurrence of the Senate. The message to the Governor from the House discloses that it was asked for that it might be amended in accordance with the views of the Attorney-General. On the same day the message of the Senate to the House asked for the return of it to the Senate, and while the message itself does not set forth the purposes for which it was returned to the Senate, the amendment was made relieving it of its objectionable provisions, which amendemnt was concurred in by the House and the bill was finally passed by the House as amended by the Senate and enrolled and presented to the Governor for his approval. We think these facts disclose a concurrent action on the part of the two branches of the Legislature in asking for the return of the bill by the Governor, and is thus within the rulings of the Court in the case of *People* v. *Devlin, supra.*

In this case the Governor was not asked by the House to return the bill against the wishes and consent of the Senate, nor was it unwillingly returned by the Governor. It was returned upon the suggestion of the Attorney-General, his legal adviser, in order that the objectionable features, as he regarded them, could be removed and the bill be approved by the Governor.

This case, too, differs from both the Virginia and the New York case in the fact that in those cases the Courts were asked to sustain the validity of the statute, while in this case they are asked to strike down the statute. It will be borne in mind that every presumption is in favor of

the existence of the statute and that a clear case must be established before the presumption is overthrown.

The Supreme Court of Colorado in determining the right of the Legislature to ask for the return of a bill presented to the Governor for his approval, said: "We discover nothing in the Constitution or statutes that forbids the Legislature's requesting, by joint or *concurrent* resolution of both Houses, the return of a bill in the hands of a Governor for his approval, or which directs or controls the action of his excellency in response to such request:

"Neither do we find any provision in the Constitution or Statute which inhibits a reconsideration and amendment, if in accordance with the parliamentary practice adopted by the respective Houses, of a bill thus returned." 9 *Colorado* 630.

And the Supreme Court of Illinois in discussing the right of the Governor to reconsider and retract his approval of a bill under circumstances and conditions therein referred to, uses this language: "And it is not an unfrequent occurrence for one House which has finally passed a bill and sent it to another House, to request its return, which being done, the vote on its final passage is reconsidered, when it is amended or rejected; and instances are not wanting in the history of our Legislature where bills that have been laid before the Governor for his approval, have been returned to one of the Houses of the General Assembly and then finally defeated, and no one has ever thought of questioning the legality of such proceeding." *People* v. *Hatch,* 19 Ill. 288.

"In the absence of a constitutional restriction the Legislature may by concurrent action of both Houses recall a bill which has been presented to the Governor." See cases cited in note 44. 36 *Cyc.* 959.

We have examined carefully the provisions of the Constitution, and particularly those to which our attention has been called, but we do not find that any of them have been

violated by the willing return of the bill in this case by the
Governor to the House of Delegates upon its request, sup-
ported by the concurrent action of the Senate in making
such request.

The third objection assails the validity of the statute
because of the alleged want of observance by the Senate of its
rule providing for the reconsideration of a vote by which a
bill was passed by that body.

Section 19 of Article 3 of the Constitution provides that
each House shall determine the rules of its own proceedings,
and it is contended that the rule of the Senate above men-
tioned, passed in virtue of this delegated right, was not
observed in the reconsideration of this bill.

"Each legislative house has power to make its own rules
not in disregard of constitutional provisions and to change
and suspend them at will, and generally Courts will not
inquire whether such rules have been complied within the
enactment of a statute." 23 *A. & E. Ency.* 162.

"When it appears that an Act was constitutionally passed,
no inquiry will be permitted to ascertain whether the two
Houses have or have not complied strictly with their own
rules in their procedure upon the bill, intermediate to its
introduction and final passage; the presumption is conclusive
that they have done so." *McDonald* v. *State,* 80 Wis. 407;
*In re Ryan,* 80 Wis. 414; *St. Louis R. R. Co.* v. *Gill,* 54
Ark. 101.

In the case of *St. Louis & San Francisco R. R. Co.* v. *Gill,*
11 L. R. A. 452, the Supreme Court of Arkansas said:
"Joint rules of the General Assembly are creatures of its
own to be maintained and enforced, rescinded, suspended or
amended as it might deem proper. Their observance was a
matter entirely subject to legislative control and discretion
and not subject to be reviewed by the Court." *Dow* v.
*Beidelman,* 49 Ark. 325.

The rule of the Senate which, as claimed by the appellants
in this case, was not observed by that body in reconsidering
the vote by which the bill had passed before it was sent to

the Governor, is known as Rule 36, which provides when and under what circumstances a vote upon which a bill is passed may be reconsidered. The non-observance of such a rule, so far as we are able to discover, does in no way conflict with the constitutional provisions or requirements in relation to the passage of laws, and as we have previously said, in line with the authorities that we have quoted, no inquiry should be made by the Court to ascertain whether the Senate, in the reconsideration of this bill, was acting in compliance with the rule above stated. The presumption is conclusive that it has done so.

The fifth and last objection urged against the validity of the Act, as we understand it, is to the use by the Senate in the reconsideration of its vote by which the bill had passed that body, of the enrolled bill that had been sent to the Governor for his approval and by him returned to the House and by the House sent to the Senate. The appellant contends that if the vote by which the bill had passed the Senate was to be reconsidered by it, then the bill engrossed for its third reading in the House and not the enrolled bill returned by the Governor should have been laid before the Senate and the same acted upon in reconsidering the vote by which the bill had previously passed that body, and that whatever amendments were to be made should have been made to that bill and not to the enrolled or re-engrossed bill sent to the Governor. But as the enrolled bill and not the engrossed bill was acted upon and the amendments made thereto, then such enrolled bill should be regarded as a new bill and being so regarded it was not read on three different days of the session in each house, and was not therefore constitutionally passed.

This objection we think is indeed technical and cannot be successfully urged against the validity of the statute. Both the engrossed and enrolled bills are before us in evidence and it is seen that the *enrolled* bill is an exact copy of the *engrossed* bill without, of course, the endorsements placed thereon by the officials in its passage through the two branches

of the Legislature. The original bill was engrossed for its third reading in the House of Delegates as required by the Constitution and when it passed both Houses it was enrolled and sent to the Governor, and although the said engrossed bill was not before the Senate when the vote by which the bill had passed was reconsidered, yet with the enrolled bill before it which as we have said, is an exact copy of the engrossed bill, the action of the Senate thereon was in effect a reconsideration of the vote by which such engrossed bill had been passed and must be so considered and should not be regarded as a new bill appearing for the first time in the Senate.

We therefore think the Court committed no error in passing the decree appealed from.

*Decree affirmed, with costs to the appellee.*