# COUNTY COMMISSIONERS OF WASHINGTON COUNTY

*vs.*

# WILLIAM G. BAKER, JR., ET AL.

*Act of Assembly—Validity of Passage—Record of Yeas and Nays.*

The provisions of Maryland Constitution, art. 3, sec. 28, declaring that "no bill shall become a law unless it be passed in each house by a majority of the whole number of members elected, and on its final passage the yeas and nays be recorded," are mandatory and not directory, and in the absence of some record of the yeas and nays on the final passage of the bill in each of the houses, there is no valid enactment. pp. 627-636

Acts 1922, ch. 383, authorizing the issue of school bonds by Washington County, is invalid because not passed by the General Assembly in accordance with the requirements of the Constitution. p. 636

*Opinion filed November 16th, 1922.*

Appeal from the Circuit Court of Baltimore City (CARROLL T. BOND, J.).

Bill by the County Commissioners of Washington County against William G. Baker, Jr., and others, co-partners, trading as Baker, Watts & Co., and others. From a decree dismissing the bill, plaintiff appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Harry Brindle,* for the appellant.

*Alfred S. Niles* and *Chester F. Morrow,* with whom were *Niles, Wolff, Barton & Morrow* on the brief, for the appellees.

THOMAS, J., delivered the opinion of the Court.

In pursuance of the provisions of chapter 383 of the published Acts of the General Assembly of Maryland of 1922, authorizing and directing the County Commissioners of Washington County to issue bonds to the extent of $300,000 for the purpose of purchasing a site or sites, and the erection, improvement and equipment of such school building or buildings as the Board of Education of Washington County might deem necessary, the County Commissioners advertised for bids for the bonds, and received and accepted the bid of Baker, Watts & Company, Townsend Scott & Son, and Nelson, Cook & Company, subject to "the understanding" that the bonds were "legally and validly issued and sold." Thereafter the purchasers refused to accept and pay for the bonds, and the County Commissioners of Washington County filed a bill of complaint in the Circuit Court of Baltimore City for specific performance of the contract. The bill was resisted on the ground that the act referred to "was not passed by the General Assembly of Maryland as provided by the Maryland Constitution," and was "never adopted by the Senate of Maryland," and the present appeal is from the decree of the court below sustaining the contention of the defendants and dismissing the bill.

At the trial of the case in the court below, the plaintiff offered in evidence a certified copy of "House Bill No. 88" (being chapter 383 of the published Acts of 1922), sealed with the great seal, signed by the Governor and the presiding officers of the Senate and House of Delegates, and recorded in the office of this Court.

The defendants then produced the Journals of the Senate and House of Delegates. It appears from the entries in the House Journal that the bill in question, which was known and referred to in the Journals as "House Bill No. 88," was introduced in the House by Mr. Funk on the 24th of January, 1922, and was read the first time and referred to the Washington County delegates; that on the 17th of Feb-

ruary it was reported favorably, with amendments, which were adopted, and the bill was read the second time and "ordered printed for a third reading," and that on the 22nd of February it was read the third time and passed, the yeas and nays being recorded in the Journal, and was then sent to the Senate. The Senate Journal shows that House Bill No. 88 was read in the Senate the first time on February 22nd, and was referred to Senators Mish, McCullough and Robb; that on March 2nd it was reported favorably with certain important amendments; that on March 3rd the amendments were adopted by the Senate, and the bill was read the second time and ordered printed for a third reading; that on March 7th it was read the third time and passed, the yeas and nays being recorded in the Journal, and was then sent to the House of Delegates. The House Journal further shows that on March 8th the House refused to concur in the amendments adopted by the Senate, and proposed a conference. The Journals of the House and Senate show that a Conference Committee was appointed on March 8th, and it appears from the House Journal that on March 22nd the Conference Committee reported the bill favorably with a number of amendments, that the amendments were adopted, and that the bill was then passed by the House, and the yeas and nays duly recorded on the Journal. But in the Senate Journal the last reference to the bill is the request of the House for a conference, and the appointment by the Senate on March 8th of three members of the Conference Committee. The Senate Journal does not show the adoption by the Senate of the amendments by the Conference Committee, and contains no record of the passage of the bill, as amended by the Conference Committee and passed by the House, or of the yeas and nays on its final passage in the Senate.

The defendants also offered in evidence the original House Bill No. 88, as printed for a third reading in the House of Delegates, which has indorsements on it indicating the action thereon referred to above. There was attached to the

printed bill the report of the Conference Committee, and there were indorsements on the bill showing that the Conference Committee's report was adopted and that the bill, as amended, was passed by the House of Delegates "by yeas and nays." But there are no indorsements on the printed bill indicating any action by the Senate after the appointment of the Conference Committee on March 8th. The defendants also produced what is spoken of as the docket, titled "Senate Book for House Bills," the entries in which indicated that the last action by the Senate in reference to House Bill No. 88 was on March 7th, when the bill, as amended in the Senate, was passed by the Senate and returned to the House of Delegates. A. Leonard Goodman, who stated that he was employed by the Department of Legislative Reference and that his duties were to make a record and report of all bills in the Senate, testified that his records did not show any action by the Senate in reference to House Bill No. 88 after the House of Delegates refused to concur in the Senate amendments, and a Conference Committee was appointed. In rebuttal the plaintiff produced Senator Mish, who testified that after House Bill No. 88, as amended by the Conference Committee, of which he was a member, was passed by the House of Delegates, "it came over to the Senate," and that "he moved the adoption of the Conference Committee report," and that he believed "that it was passed"; that he kept a list of all bills that he was interested in and wanted passed, and that the bill in question was "stricken off" his list "as passed," and that the "main" reason he thought the bill was passed by the Senate was because it was "struck off" his list. It was agreed by counsel that if Senator William I. Norris were present at the trial "he would testify that he remembers that House Bill No. 88, with the report of the Conference Committee attached to it, was offered in the Senate by Senator Mish and was adopted, but that he cannot recall the time or date when this action was taken by the Senate."

Section 22 of article 3 of the Constitution provides: "Each House shall keep a Journal of its proceedings, and cause

the same to be published.  The yeas and nays of members on any question shall, at the call of any five of them in the House of Delegates, or one in the Senate, be entered on the Journal."  Section 27 of the same article contains the provision that "no bill shall be read the third time until it has been actually engrossed or printed for a third reading," and section 28 declares that "no bill shall become a law unless it be passed in each House by a majority of the whole number of members elected, and on its final passage the yeas and nays be recorded; nor shall any resolution requiring the action of both Houses be passed except in the same manner."  Section 30 provides:  "Every bill, when passed by the General Assembly, and sealed with the great seal, shall be presented to the Governor, who, if he approves it, shall sign the same in the presence of the presiding officers and chief clerks of the Senate and House of Delegates.  Every law shall be recorded in the office of the Court of Appeals, and in due time be printed, published and certified under the great seal, to the several courts, in the same manner as has been heretofore usual in this State."

There have been a number of cases in this State in which the validity of an act has been questioned on the ground that it was not passed in accordance with the provisions of the Constitution, but in all of them, except the cases of *Balto. Fidelity Warehouse Co.* v. *Lumber Co.,* 118 Md. 135, and *Thrift* v. *Towers,* 127 Md. 54, the contention was that the bill passed by the General Assembly was different from the duly authenticated and published act.  *Fouke* v. *Fleming,* 13 Md. 392; *Annapolis* v. *Harwood,* 32 Md. 471; *Berry* v. *Balt. & Drum Pt. R. R. Co.,* 41 Md. 446; *Legg* v. *Annapolis,* 42 Md. 203; *Ridgely* v. *Baltimore City,* 119 Md. 567; *Jessup* v. *Baltimore,* 121 Md. 562.  In *Balto. Fidelity Warehouse Co.* v. *Lumber Co., supra,* the validity of the act turned upon the question of the authority of the Governor to return the bill to the House of Delegates at the request of the House and Senate, in order that it might be amended in respect to

certain objectionable features, and of the regularity of the procedure adopted by the Senate and House in reference to the bill after it was returned, and in *Thrift* v. *Towers, supra,* the bill, which had been introduced in the Senate, was subsequently amended "by striking out all after the word 'a bill,' " and inserting in lieu thereof an entirely new bill, with a different title. The original title and number of the bill were carried through the Journals, and were printed "on the outside of one of the pages or wrappers" of the bill. The ground of attack was that the bill had been "read and passed" in each branch of the General Assembly "by its original title," but the Court said that in order to establish his position the appellant "was bound to show by competent and clear evidence that the original title *alone* was read," and that there was "no evidence to show that the original title was read after the amendment was adopted. The Journals do not so show. It was merely referred to by the original title."

In the case of *Berry* v. *Balt. & Drum Pt. R. R. Co., supra,* which was decided after the adoption of the present Constitution, and where "the engrossed bill, as it was finally acted on by the two Houses of the Legislature, with indorsements thereon by the proper officers, as to the action of the respective Houses, together with the Journals of both Houses," had been produced, JUDGE ALVEY said: "From the evidence thus furnished, it is made clear beyond all question or dispute, that the particular section of the act involved, as it passed the two House of the Legislature, is essentially different from the corresponding section in the Act that received the imprint of the great seal, the signature of the Governor, and was lodged in the office of this court for record, and afterwards published. * * * It is contended by the appellant that the law must be taken to be as we find it evidenced by the bill filed in the office of this court, under the great seal, and the signature of the Governor; while, on the other hand, it is insisted by the appellee that it is competent for this court to examine the Journals of the two Houses of the General As-

sembly, and the original engrossed bill, with the indorsements thereon, in order to ascertain and determine what were the provisions of the act that really passed the two Houses of the General Assembly." After referring to the cases of *Fouke v. Fleming, supra,* and *Annapolis* v. *Harwood, supra,* he said further: "But in the case now before us, it is plainly shown by the most unquestionable evidence, that the third section of the bill as engrossed, before the third reading and the passage thereof, pursuant to the requirements of the Constitution, art. 3, sec. 27, *and as it actually passed,* is essentially different from the corresponding section in the bill that was attested, sealed, signed by the Governor, and filed for record. There is therefore no ground for presumption in favor of the identity of the bill as recorded in the office of this court, with that which passed the Legislature, unless we make the facts of the attestation, the imprint of the great seal, the signature of the Governor, and the filing for record, conclusive upon the question as to what is law, and exclude all other evidence upon the subject, no matter how plain and direct it may be. But to do this would be virtually denying to the people of the State the benefit of the safeguards provided by the Constitution, and to allow and enforce that as law which has not been assented to by their representatives. The Constitution has prescribed certain modes and prerequisites for the enactment of laws, and as these, by the terms of the Constitution, are imperative conditions, no bill, not so enacted into law, should be allowed to affect the rights of the citizens. * * * Unquestionably, where an act has been duly authenticated and published as law by authority, the presumption is, that all the constitutional solemnities and prerequisites necessary to its valid enactment have been complied with; and this presumption exists until the contrary is clearly made to appear. But when it can be made clearly to appear, as in this case it has been, that the particular bill or section of a bill, though it may have all the forms of authentication, has never in fact received the legislative as-

sent, we think the court is bound to look not only behind the
printed statute book, but beyond the forms of authentication
of the bill as recorded in the office of this court, and if the
evidence be clear and entirely satisfactory to the mind of
the court, to decide accordingly." The principles announced
in *Berry's case* have been adhered to in all the decisions in
this State, and in *Jessup* v. *Baltimore, supra,* JUDGE URNER,
speaking for the Court, said: "While the decisions of this
Court recognize its right and duty, in passing upon a ques-
tion like the present, 'to receive evidence such as that fur-
nished by the engrossed bills, with the indorsements thereon,
and the Journal of proceedings of the two Houses of the
Legislature' (*Berry* and *Ridgely cases, supra*), the inadmis-
sibility of parol testimony to impeach a duly authenticated
statute has been clearly determined. Even the legislative
Journals do not of themselves have such a probative quality
and are entitled to be considered only in connection with
other competent proof."

But the precise question raised by the present appeal was
not raised in any of the cases referred to, and section 28 of
article 3 of the Constitution has never been directly con-
strued by this Court. Here the question is, not whether
chapter 383 of the published Acts of 1922 is different from
the bill as it actually passed the two Houses of the Legisla-
ture, but whether the bill was in fact passed by the General
Assembly. In *Annapolis* v. *Harwood, supra,* the Court
refers to the difference between such a question and the ques-
tion "of evidence to prove the *contents*" of an act, and in
*Thrift* v. *Towers, supra,* JUDGE BURKE said: "The indorse-
ments on the bill and the Journal entries in both houses show
the passage of some bill." As we have said, section 28 de-
clares that "no bill shall become a law unless it be passed in
each House by a majority of the whole number of members
elected, and on its final passage the yeas and nays be re-
corded." That these provisions of the Constitution are man-
datory there is no room to question. In *Berry's case,* JUDGE

ALVEY said that the certain "modes and prerequisites" pre-
scribed by the Constitution for the enactment of laws, are,
"by the terms of the Constitution," "imperative conditions,"
and that "no bill, not so enacted into law, should be allowed
to affect the rights of the citizen," and in *Legg* v. *Annapolis,
supra,* the Court said: "A valid statute can only be passed
in the manner prescribed by the Constitution, and when the
provisions of that instrument, in regard to the manner of
enacting laws, are wholly disregarded, in respect to a par-
ticular act, it would seem to be a necessary conclusion that
the act, though having the forms of authenticity, must be
declared a nullity.    Otherwise the express mandatory pro-
visions of the Constitution would be of no avail or force what-
ever."    In *Cooley's Constitutional Limitations* (6th ed.),
page 168, Judge Cooley says: "It is also provided in the
constitutions of some of the states that, on the final passage of
every bill, the yeas and nays shall be entered on the journal.
Such a provision is designed to serve an important purpose
in compelling each member present to assume as well as to
feel his due share of responsibility in legislation; and also in
furnishing definite and conclusive evidence whether the bill
has been passed by the requisite majority or not.    'The con-
stitution prescribes this as the test by which to determine
whether the requisite number of members vote in the affirma-
tice.    The office of the journal is to record the proceedings of
the house, and authenticate and preserve the same.    It must
appear on the face of the journal that the bill passed by a con-
stitutional majority.    These directions are all clearly impera-
tive.    They are expressly enjoined by the fundamental law
as matters of substance, and cannot be dispensed with by
the legislature.' "    A similar statement is found in *Black's
Constitutional Law* (3rd ed.), where the author says, on page
381: "Some of the state constitutions provide that on the
final passage of every bill the vote shall be taken by the yeas
and nays. * * * Such a provision is mandatory.    The legisla-
ture has no power to dispense with it.    If the act does not

appear from the journals to have been passed in this manner, where the constitution requires it, it is no law." In the case of *Union Bank* v. *Commissioners,* 119 N. C. 214, the Supreme Court of North Carolina construed the section of the Constitution of that State, which provided: "No law shall be passed to raise money on the credit of the State, or to pledge the faith of the State, * * * unless the bill for the purpose shall have been read three several times in each House of the General Assembly and passed three several readings, which readings shall have been on three different days and agreed to by each House respectively, and *unless the yeas and nays, on the second and third reading of the bill, shall have been entered on the Journals."* The Court said: "This section of the Constitution is imperative and not recommendatory, and must be observed; otherwise this wise and necessary precaution inserted in the organic law would be converted into a nullity by judicial construction. * * * The Journals offered in evidence showed affirmatively that 'the yeas and nays on the second and third reading of the bill' were not 'entered on the Journal.' And the Constitution, the supreme law, says that, unless so entered, no law authorizing State, counties, cities or towns to pledge the faith of the State or to impose any tax upon the people, &c., shall be valid. * * * That the organic law does require the additional forms and the added evidence of the Journals is plain beyond power of controversy. Accordingly, the law is well settled by nearly one hundred adjudicated cases in the courts of last resort in thirty states, and also by the Supreme Court of the United States, that where a state constitution prescribes such formalities in the enactment of laws as require a record of the yeas and nays on the legislative Journals, these Journals are conclusive as against not only a printed statute published by authority of law, but also against a duly enrolled act." After giving a list of ninety-three cases, the Court said further: "It is believed that no federal or state authority can be found in conflict with them. Decisions can be found, as for in-

stance *Carr* v. *Coke, supra* (116 N. C. 223), to the effect that where the constitution contains no provision requiring entries on the Journal of particular matters, such, for example, as calls of the yeas and nays on a measure in question, the enrolled act cannot in such case be impeached by the Journals. That, however, is a very different proposition from the one involved here, and the distinction is adverted to in *Field* v. *Clark,* 143 U. S. on p. 671." In the case of *Rush* v. *Allen,* 1 Boyce (Del.), 444, 76 Atl. 370, the section of the constitution of Delaware construed by the superior court of that state, provided: "Each House shall keep a journal of its proceedings, and publish the same immediately after every session, except such parts as may require secrecy, and the yeas and nays of the members on any question shall, at the desire of any member, be entered on the journal. No bill or joint resolution, except in relation to adjournment, shall pass either house unless the final vote shall have been taken by yeas and nays, and the names of the members voting for and against the same be entered on the journal, nor without the concurrence of a majority of all the members elected to each house." The Court, in the course of a carefully prepared opinion, said: "The three provisions read together are as follows: 'No bill * * * shall pass either House unless the final vote shall have been taken by yeas and nays, and the names of the members voting for and against the same shall be entered on the journals, nor without the concurrence of a majority of all the members elected to each House.' Can it be possible that the first clause and the last are mandatory, and the other not? It seems to us that such a construction would be not only forced and unnatural, but also highly technical, even from a grammarian's point of view. It might possibly improve the grammar just a little if the word 'unless' were inserted between the word 'and' and the word 'the,' so that the clause would read 'and *unless* the names of the members voting for and against the same shall be entered on the journal.' But manifestly the word 'unless'

is to be understood; that is, the meaning is the same as though it had been employed. Such is the natural meaning of the language used, and the meaning that would be commonly given thereto." After a full discussion of the cases in that and other states, the Court said further: "But why make further reference to cases cited as opposed to the journal entry rule? No decision can be of any weight as an authority. unless it is based upon constitutional provisions similar to those in the case at bar. We are very confident that no decision can be found in any state, which holds the enrolled act conclusive, if the constitutional provision respecting the journals and the passage of the act are similar to those contained in the Constitution of this State. We are clearly of the opinion that the North Carolina court in the *Union Bank case* correctly stated that no federal or state authority can be found in conflict with those decisions which uphold the journal entry doctrine where the Constitution requires not only that the yeas and nays shall be taken, but also that they shall be entered on the journal before a bill can be passed, and become a law. * * * Our conclusion upon this branch of the case is that when the constitution of a state contains a provision that no bill shall pass unless the yeas and nays are entered on the journal, such a provision is mandatory and not directory, and must be enforced by the courts, and where it appears by an inspection of the journals that such mandatory provision has not been obeyed or complied with, the courts should not hesitate in declaring the act invalid."

The division among the cases in this country is, generally speaking, between what are called the "Enrolled Bill rule" (25 *R. C. L.* p. 895) and the "Journal Entry Rule" (25 *R. C. L.* p. 898), and is referred to by JUDGE BURKE in *Ridgely* v. *Baltimore City, supra,* where he says: "There is great diversity of opinion in the American courts as to the power of the Court to strike down an act after it has been authenticated in the manner prescribed by the Constitution

upon the ground that it was not constitutionally passed. Many of the courts hold * * * that the authentication of the act conformably to the Constitution is conclusive and unimpeachable evidence that the statute was legally passed. Other courts hold that the court has power to go behind the authentication and inquire whether the act was passed conformably to the mandates of the Constitution. The Maryland courts have taken the position that they are not precluded by the authentication, and the cases in which the question has been considered have turned upon the *competency* and *sufficiency* of the evidence adduced to rebut the presumption arising from the proper authentication of the bill that it was constitutionally passed." But the diversity of opinion and division of the cases referred to have generally arisen in cases where the attempt was to show that the bill actually passed by the Legislature was different from the duly authenticated act, or as to constitutional requirements compliance with which was not required to be noted on the journals or to be recorded, and no case has been brought to our attention in which the court followed the Enrolled Bill Rule, where mandatory provisions of the Constitution involved required a record of their observance to be made on the journals. In the case of *Field* v. *Clark,* 143 U. S. 649, where the contention was that an Act of Congress was void because the Congressional record of proceedings, and other papers printed by authority of Congress, showed that a section of the bill, as it was finally passed, was not in the authenticated act, and where the appellants relied upon the clause of the Constitution which declared that "each house shall keep a journal of its proceedings, and from time to time publish the same, except such parts as may in their judgment require secrecy; and the yeas and nays of the members of either House on any question shall, at the desire of one-fifth of those present, be entered on the journal," the Supreme Court held that the authentication of the act was complete and unimpeachable, but MR. JUSTICE HARLAN was careful to point out that the

Court was not dealing with matters required by the Constitution to be entered on the journals, and said: "In regard to certain matters, the Constitution expressly requires that they shall be entered on the journal. To what extent the validity of legislative action may be affected by the failure to have those matters entered on the journal, we need not inquire. No such question is presented for determination."

It is true, section 28 of the Constitution of this State does not in terms require the record of the yeas and nays to be made on the *Journals,* but it does declare that no bill shall become a law unless, on its final passage, the yeas and nays are *recorded,* and as section 22 requires each House to keep a Journal of its proceedings, and cause the same to be published, and further provides that the yeas and nays of members, on the call of any five of them in the House, or one in the Senate, shall be entered on the "Journal," the Journals would seem to be the proper place to make the record required by section 28. *Berry's case,* p. 463. We are not required, however, to determine in this case to what extent the validity of an act would be affected by the failure, on the final passage of the bill, to record the yeas and nays on the *Journal,* for here there is *no record at all* of the yeas and nays on the final passage of the bill in the Senate, and the entries in the Journals, and the endorsements on the original House Bill No. 88, as printed for a third reading in the House of Delegates, clearly indicate that there was never any action on the bill by the Senate after it was amended by the Conference Committee and passed by the House of Delegates.

In the absence of some record of the yeas and nays on the final passage of the bill by the Senate, we must hold that chapter 383 of the Acts of 1922 is invalid because it was not passed by the General Assembly in accordance with the requirements of the Constitution, and we accordingly passed the *per curiam* order of October 26th, 1922, affirming the decree of the court below.