REDWOOD *v.* LANE, GOVERNOR OF MARYLAND, ET AL.

[No. 124, October Term, 1949.]

*Decided, per curiam, November 18, 1949.*

*Opinion filed December 8, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*H. Vernon Eney* and *Robert M. Thomas,* with whom were *Armstrong, Machen & Eney* on the brief, for the appellant.

*Hall Hammond, Attorney General,* with whom was *Harrison L. Winter, Assistant Attorney General,* on the brief, for the appellees.

COLLINS, J., delivered the opinion of the Court.

On November 7th, 1949, John Redwood Jr., appellant here, filed a Bill of Complaint on behalf of himself and other taxpayers of the State of Maryland against the Board of Public Works of Maryland, appellees, asking among other things, that Chapter 488 of the Acts of the General Assembly of Maryland of 1949 be declared of no effect and that the appellees be enjoined from taking any action whatsoever pursuant to that act. From a decree of Circuit Court No. 2 of Baltimore City dismissing the bill, after hearing, the appellant appeals.

The act in question, Chapter 488 of the Acts of the General Assembly of Maryland of 1949, purportedly authorized the General Public School Construction Loan of 1949 in the amount of fifty million dollars. It originated in the Legislature as Senate Bill 442. According to the Senate Journal this Bill was read the first time and referred to the Senate Committee on Finance and reported favorably. The favorable report of the Senate Finance Committee was adopted, and an amendment to the Bill was offered from the floor. This amendment was read and rejected by yeas and nays. The Bill, as reported by the Senate Finance Committee, was read the second time and ordered printed for its third reading.

The Senate Journal contains no further record of this Bill except an entry at page 1637 that it was returned from the House of Delegates to the Senate bearing the endorsement of the House of Delegates "read the third time and passed by yeas and nays" on April 1, 1949. The Senate Journal nowhere indicates that Senate Bill 442 was passed by a majority of yeas and nays with a record of such yeas and nays being entered in the Senate Journal.

The pertinent provisions of the Constitution of Maryland are contained in Article III of the Constitution as follows:

"Sec. 22. Each House shall keep a Journal of its proceedings, and cause the same to be published. The yeas and nays of members on any question shall, at the call of any five of them in the House of Delegates, or one in the Senate, be entered on the Journal."

"Sec. 28. No bill shall become a law unless it be passed in each House by a majority of the whole number of members elected, *and on its final passage the yeas and nays be recorded;* nor shall any resolution requiring the action of both Houses be passed except in the same manner." (Italics supplied here).

"Sec. 30. Every bill, when passed by the General Assembly, and sealed with the Great Seal, shall be presented to the Governor, who, if he approves it, shall sign the same in the presence of the presiding officers and chief clerks of the Senate and House of Delegates. Every law shall be recorded in the office of the Court of Appeals, and in due time be printed, published and certified under the Great Seal, to the several courts, in the same manner as has been heretofore usual in this State."

The appellant contends that because there was no record in the Senate Journal that on the third reading the Bill in question was passed by a majority of the whole number of members elected and in its final passage the yeas and nays were not recorded, as required by Section 28 of Article III of the Constitution of Maryland, *supra,* the Act in question is null and void.

On the other hand, part of Plaintiff's Exhibit No. 3 shows the following extract from the Journal of Proceedings of the Senate of Maryland:

"Page 1394, March 30, 1949

"House Bill No. 442-By Mr. Sklar:

"Subject: 'Banks and Trust Companies,' sub-title, 'Savings Institutions.'

"Which was read the third time and passed by yeas and nays as follows:", listing 29 names of those voting in the affirmative and none voting in the negative. The appellees contend that this reference in the Senate Journal to purported action on House Bill 442 was really action on Senate Bill 442.

Testimony as to the following facts was offered in evidence by parol testimony: On March 30, 1949, a few days before the adjournment of the Legislature, Senate Bill 442 appeared on the third reading calendar of the Senate. This calendar was distributed to the Senate, the Press, and the Bureau of Legislative Reference marked Senate Bill 442 relating to schools and a bond issue. Senate Bill 442 was announced as being before that body for third reading and final passage and so read by the reading clerk, and the yea and nay votes were taken. The Bill allegedly was approved unanimously and the vote recorded by the reading clerk on a tally sheet which was later attached to the following paper, offered as Defendant's Exhibit No. 4:

"House of Delegates

No. 442

---

Mr. Sklar—Banking, Insurance and Social Security.

---

By the House of Delegates,

March 2, 1949.

Introduced, read the first time and referred to the Committee on Banking, Insurance and Social Security.

By Order

F. Byrne Austin, Chief Clerk

---

A BILL

Entitled

title, 'Banks and Trust Companies,' subtitle 'Savings Institutions.' ''

On a yellow sheet to which this and the tally sheet were attached was stamped the following:

"Which was read the third time and passed

'Yeas and Nays as follows:'

"Said Bill was then sent to the House of Delegates."

Testimony was also introduced purporting to show that the Assistant Journal Clerk customarily tears out and places on a sheet of paper certain bills which he knows are coming up on the third reading file. He usually scratches out all the printed matter on the particular bill and when that bill comes up he staples it to the sheet to lessen his work. The appellee contends, and the Chancellor found, that instead of pulling down Senate Bill 442 in its final passage he pulled out House Bill 442 which related to an entirely different subject, "Banks and Banking," and scratched through all of that title except the number of the bill and the few words showing in a general sense the subject of the bill. He then stamped on the yellow paper to which this House Bill 442 was attached the following words: "Which was read the third time and passed 'Yeas and Nays as follows:' Said Bill was then sent to the House of Delegates." This is the paper to which the tally sheet was attached. When Senate Bill 442 reached the House of Delegates it followed the normal procedure there. The Secretary of the Senate presented it to the clerk who receipted for it. It was then sent to the speaker of the House and read from the desk, then sent to the House Ways and Means Committee, reported out favorably and finally passed.

The evidence further showed that while the manuscript copy of the Senate Journal relating to purported action on House Bill 442 indicated that after third reading and final passage "Said Bill was then sent to the House of Delegates," the Journal, as printed, stated that

after third reading and final passage House Bill 442 was "returned" to the House of Delegates. This change was made by the compositor to correct what he thought was an error. It was then authenticated, signed by the offices of both Houses, presented to the Governor, sealed with the Great Seal of the State, and duly signed by him. It was then duly recorded in the Court of Appeals.

Evidence was also offered to show that House Bill 442 which dealt with "Banks and Banking," *supra,* did not get out of committee, was never sent over to the Senate and was never acted on by that body. The President of the Senate testified that he had checked Senate Bill 442 with a red pencil check on his copy of the Senate calendar as passed. From other evidence offered it does not appear that the checking of the Senate Calendar at that time was entirely accurate. According to the records of the Associated Press, and the Department of Legislative Reference, Senate Bill 442 was passed by the Senate on March 30, 1949, with 29 votes in the affirmative and none in the negative.

With these facts and others before him which we do not consider necessary to recite in this opinion, the Chancellor found that the Bill was validly enacted. The appellant claims that this parol evidence should not have been admitted, over his objection and over his motion to strike out, to show the facts above recited. For the purposes of this case we do not deem it necessary to decide whether all of this parol evidence, or any part or parts thereof, was propery admitted. Considering all of the evidence offered, we are of opinion that there was no record of the yeas and nays on the final passage of Senate Bill 442 as required by Section 28 of Article III of the Maryland Constitution. In this case the question before us is not whether the journals alone impeach the validity of a duly enrolled authenticated Act. *Ridgely v. Baltimore City,* 119 Md. 567, 87 A. 909; *Jessup v. Baltimore City,* 121 Md. 562, 89 A. 103; *Thrift v. Towers,* 127 Md. 54, 95A. 1064; *Miggins v. State,* 170 Md. 454, 184 A. 911. The final question is whether there is any

record of the final yeas and nays as required by Section 28, *supra,* of Article III of the Constitution.

Of course, when a bill of either house of the General Assembly is duly authenticated and published as a Chapter of the Acts of the General Assembly *prima facie* presumption arises that such a bill has been duly enacted into law in accordance with the constitutional provisions. *Washington County v. Baker,* 141 Md. 623, 629, 119 A. 461; *Miggins v. State, supra,* 170 Md. 454, 459, 460, 184 A. 911, and cases there cited.

In the case of *Washington County v. Baker, supra,* a bill providing for a bond issue of $300,000.00 for school buildings in Washington County was resisted on the grounds that it was not passed by the General Assembly as provided by the Constitution and never adopted by the Senate of Maryland. The Senate Journal contained no record of the final passage of the bill as amended by the Conference Committee and passed by the House or of the yeas and nays on its final passage in the Senate. Parol evidence was admitted, without objection, endeavoring to show that the bill was passed by the Senate. Judge Thomas says in that case, 141 Md. at page 627, 119 A. at page 463: "There have been a number of cases in this State in which the validity of an act has been questioned on the ground that it was not passed in accordance with the provisions of the Constitution, but in all of them, except the cases of *Baltimore Fidelity Warehouse Co. v. Canton Lumber Co.,* 118 Md. 135, 84 A. 188, and *Thrift v. Towers,* 127 Md. 54, 95 A. 1064, the contention was that the bill passed by the General Assembly was different from the duly authenticated and published act. *Fouke v. Fleming,* 13 Md. 392; *Mayor, etc., of City of Annapolis v. Harwood,* 32 Md. 471, 3 Am. Rep. 161; *Berry v. Baltimore & Drum Point R.R. Co.,* 41 Md. 446, 20 Am. Rep. 69; *Legg v. Mayor, etc. of City of Annapolis,* 42 Md. 203; *Ridgely v. Baltimore City,* 119 Md. 567, 87 A. 909; *Jessup v. Baltimore City,* 121 Md. 562, 89 A. 103." After referring to the *prima facie* presumption of constitutionality above referred to he points out, 141

Md. at page 630, 119 A. at page 464, that Section 28 of Article III of the Constitution had never before been directly construed by this Court. On this question he discusses in detail the cases of *Baltimore Fidelity Warehouse Co. v. Canton Lumber Co., supra; Mayor, etc., of Annapolis v. Harwood, supra; Thrift v. Towers, supra; Berry v. Baltimore & Drum Point R.R. Co., supra; Legg v. Mayor, etc. of City of Annapolis, supra;* and quotes from *Cooley's Constitutional Limitations* (Sixth Edition), from *Black's Constitutional Law,* (Third Edition) and discusses at length the case of *Union Bank of Richmond v. Commissioners,* 119 N. C. 214, 25 S. E. 966, 34 L. R. A. 487. He says, 141 Md. at pages 633-636, 119 A. at page 465, in holding that in the absence of some record of the yeas and nays on the final passage by the Senate the bill is invalid in spite of the constitutional presumption, "In the case of *Rash v. Allen,* 1 Boyce 444, 24 Del. 444, 76 Atl. 370, the section of the Constitution of Delaware construed by the Superior Court of that state provided * * * 'No bill or joint resolution, except in relation to adjournment, shall pass either house unless the final vote shall have been taken by yeas and nays, and the names of the members voting for and against the same shall be entered on the journal, nor without the concurrence of a majority of all the members elected to each house.' * * * 'We are very confident that no decision can be found in any state, which holds the enrolled act conclusive, if the constitutional provisions respecting the journals and the passage of the act are similar to those contained in the Constitution of this state. We are clearly of the opinion that the North Carolina court in the Union Bank case correctly stated that no federal or state authority can be found in conflict with those decisions which uphold the journal entry doctrine where the Constitution requires not only that the yeas and nays shall be taken, but also that they shall be entered on the journal before a bill can be passed, and become a law. * * * Our conclusion upon this branch of the case is that when the Constitution of a state contains a provision

that no bill shall pass unless the yeas and nays are entered on the journal, such provision is mandatory and not directory, and must be enforced by the courts, and where it appears by an inspection of the journals that such mandatory provision has not been obeyed or complied with, the courts should not hesitate in declaring the act invalid.' * * * It is true, section 28 of the Constitution of this state does not in terms require the record of the yeas and nays to be made on the *journals,* but it does declare that no bill shall become a law unless, on its final passage, the yeas and nays are *recorded,* and, as section 22 requires each House to keep a Journal of its proceedings, and cause the same to be published, and further provides that the yeas and nays of members, on the call of any five of them in the House, or one in the Senate, shall be entered on the 'Journal,' the Journals would seem to be the proper place to make the record required by section 28. *Berry's case,* 41 Md. 446, at page 463, 20 Am. Rep. 69. We are not required, however, to determine in this case to what extent the validity of an act would be affected by the failure, on the final passage of the bill, to record the yeas and nays on the *Journal,* for here there is *no record at all* of the yeas and nays on the final passage of the bill in the Senate, and the entries in the Journals, and the indorsements on the original House Bill No. 88, as printed for a third reading in the House of Delegates, clearly indicate that there was never any action on the bill by the Senate after it was amended by the conference committee and passed by the House of Delegates." The appellee contends that in the case of *Lumberton Improvement Co. v. Board of Commissioners,* 1917, 146 N. C. 353, 59 S. E. 1014, the North Carolina court admitted evidence and corrected the effect of a clerical error in the Journal and held valid a bill as to which such clerical error appeared. We do not believe this affects the decision in *County Com'rs. of Washington County v. Baker, supra.* That case therefore clearly holds the constitutional provision, that on the final passage of a bill the yeas and nays must be recorded, to be

mandatory and not directory. No one could seriously contend to the contrary. As appellee contends, that case does not specifically hold that the record of the yeas and nays must be in the Journal.

In Volume I of the *Debates and Proceedings* of the Maryland Reform convention, which drafted the Constitution of 1851, pages 332, 333, 334 and 335, show that a motion was made to amend section 18, [now section 28 of Article III of the present Constitution of 1867] to read: "No Bill shall become a law unless it receives the concurrent vote of a majority of the members present in both Houses." In the debate on this amendment, which was defeated by a large majority, the advantages of having the yeas and nays recorded was thoroughly discussed from the viewpoint that no member of the Legislature should be enabled to escape the responsibility of his legislative vote.

In the case at bar as in the case of *County Com'rs. of Washington County v. Baker, supra,* there is no record of the yeas and nays on the final passage of Senate Bill 442. We are asked by the appellees to hold that the Senate made a record of this yea and nay vote by the entry at page 1394 of the Senate Journal on March 30, 1949, here a part of Plaintiff's Exhibit No. 3, purporting to show the final vote on House Bill 442 covering "Banks and Trust Companies", and by the tally sheet attached to Defendant's Exhibit No. 4 which was the heading of the same House Bill. This goes much further than correcting an error. It is, in fact, making the record. This we cannot do. This is the function of the legislative body where the final vote was taken, not the function of the judiciary.

Article 8 of the Declaration of Rights of this State specifically provides: "That the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other." This language is clear and explicit. *Niles on Constitutional*

*Law*, page 19. *Beasley v. Ridout*, 94 Md. 641, 52 A. 61. Judge Earle in the case of *Crane v. Meginnis*, 1 G. & J. page 463, aptly says at page 472, 19 Am. Dec. 237: "The Constitution of this State, composed of the Declaration of Rights and form of government, is the immediate work of the people, in their sovereign capacity, and contains standing evidences of their permanent will. It portions out supreme power, and assigns it to different departments, prescribing to each the authority it may exercise, and specifying that from the exercise of which it must abstain. The public functionaries move then in a subordinate character, and must conform to the fundamental laws or prescripts of the creating power. When they transcend defined limits, their acts are unauthorized, and being without warrant, are necessarily to be viewed as nullities." Although we might desire to make this record for the Senate in order to obviate the difficulties presented by declaring this act invalid, we have no power to do so.

If the Courts could make records for the Legislature no lawyer in determining whether a statute was legally enacted could rely upon the printed statutes and the Legislative records. As stated in *County Com'rs. of Washington County v. Baker*, the Journals seem to be the proper place to make the record of the yeas and nays as required by Section 28, *supra*. We hold that the Journal must show the yea and nay vote on final passage. Here there is no record in either the temporary or permanent Journal.

The appellees further contend that the effect of declaring this Act invalid is to hold that an incompetent or careless legislative clerk or, as a worse possibility, a bribed or corrupt clerical assistant could thwart the will of the Legislature by failing to record the yea and nay vote. *Robey v. Broersma*, 181 Md. 325, 345, 26 A. 2d 820, 29 A. 2d 827, 146 A. L. R. 687. In answer to that contention we can only say that the Constitution has set up an iron-clad rule that the yea and nay vote must be

recorded. The Constitution rests the responsibility on the whole Legislature to see that this is done.

For the reasons herein given we passed the *per curiam* order of November 18, 1949, reversing the decree appealed from and holding Chapter 488 of the Acts of the General Assembly of Maryland of 1949 invalid and of no effect.