## STATE TAX COMMISSION, ET AL. *v.* POTOMAC ELECTRIC POWER COMPANY

[No. 27, April Term, 1943.]

*Decided June 2, 1943.*

The cause was argued before SLOAN, C. J., DELAPLAINE, COLLINS, MARBURY, GRASON, MELVIN, and ADAMS, JJ.

*Hall Hammond, Deputy Attorney General,* with whom was *William C. Walsh, Attorney General,* on the brief, for the appellants.

*S. R. Bowen*, with whom was *M. H. Magruder* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

The question presented by this case is whether the State recordation tax is payable upon the recordation of a counterpart mortgage in Charles County in 1942, after the original mortgage had been recorded in Prince George's and Montgomery counties in 1936.

On July 1, 1936, Potomac Electric Power Company, a public utility incorporated under the laws of the District of Columbia, executed a trust mortgage upon its property to Riggs National Bank of Washington, trustee, to secure a bond issue of $15,000,000. On the following day the mortgage was recorded in Prince George's and Montgomery counties, the only Maryland counties in which property of the company was located. In 1937 the Legislature passed the Recordation Tax Act, imposing a tax upon every instrument of writing recorded on and after June 1, 1937, and until September 30, 1939. Acts of 1937, Sp. Sess., Chap. 11, Sec. 4. In 1939 the Act was re-enacted with amendments. Acts of 1939, Chap. 277, Sec. 6; Code, 1939, Art. 81, Secs. 220, 221. In the case of instruments securing a debt, the tax rate is 10 cents for each $100 of the principal amount of the debt secured. The Act provides, however, that the tax upon mortgages and deeds of trust conveying property lying partly within and partly without the State shall apply only to such proportion of the debt secured as the value of the property within the State bears to the value of the whole property conveyed. It is conceded in this case that the portion of the mortgaged property located within the State of Maryland had a value of not over $1,500,000. Accordingly, when three additional mortgages, executed on December 1, 1939, December 10, 1939, and August 1, 1940, to secure an additional bond issue of $15,000,000, were offered for record in Prince George's County, a total of $1,500 was paid for recordation stamps for the mortgages. A certificate

stating that the stamps had been purchased was affixed to the mortgages before they were recorded in Montgomery County.

On July 15, 1942, a supplemental mortgage reciting after-acquired property situated in Charles County was recorded in Prince George's and Montgomery counties. The controversy now before us arose when a counterpart of the first mortgage of July 1, 1936, was offered for record, along with the four subsequent mortgages, in the office of the Clerk of the Circuit Court for Charles County. The clerk refused to record the counterpart unless stamps were affixed thereto. It appears from the record that the company in August, 1942, paid the sum of $1,500 under protest for the stamps, which were affixed to the mortgage. The company thereupon filed with the State Tax Commission a claim for refund of the recordation tax. Our statute provides that whenever any person shall have paid any special taxes which were erroneously or illegally assessed or collected, he may file with the State Tax Commission a claim for the refund thereof. If the commission determines that such claim for refund is not just and proper, it shall disallow such claim, but the person filing the claim shall be entitled to appeal from the final action of the commission in the same manner as appeals are permitted from any other action of the commission. Acts of 1941, Chap. 701, Sec. 4. On October 5, 1942, the commission disallowed the claim for refund. On appeal the Circuit Court for Prince George's County adjudged that the imposition of the tax of $1,500 was unlawful, and that the State Tax Commission was in error in refusing to order the payment refunded, and ordered that the proceedings be remanded to the commission for the passage of an order in conformity therewith. This appeal has been taken from the order of the court by the commission, and by Hooper Miles, Treasurer of the State of Maryland, and J. Millard Tawes, Comptroller.

It is conceded that the counterpart of the first mortgage, offered for record in Charles County, did not con-

vey any property located in Charles County. It is also conceded that it did not secure any additional bonds or other indebtedness. No new consideration whatever passed under it. The Recordation Tax Act of 1939 contains the following provision: "No tax shall be required for the recordation of any instrument securing a debt that merely confirms, corrects, modifies or supplements an instrument previously recorded, or conveys or pledges property in addition to, or in substitution for the property originally conveyed or pledged, if such supplemental instrument does not increase the amount of the debt secured by the instrument previously recorded." The Act also provides: "Any instrument, or counterpart of any instrument, previously recorded may be recorded in any other county or in Baltimore City * * * without the payment of a tax." Acts of 1939, Chap. 277, Sec. 6; Code, Art. 81, Sec. 220.

The contention of the State Tax Commission is that the recordation tax is not a tax upon property, but an excise imposed upon the privilege of using the recordation facilities of the State, and that since no tax was payable upon the recordation of the original mortgage in 1936, its counterpart should not be allowed to escape the tax in 1942. It is urged that we should read into the statute the words "except in cases where the original instrument was recorded prior to June 1, 1937." It is a cardinal rule of statutory construction that statutes should always be construed to effectuate the intention of the Legislature. In ascertaining that intention, the court interprets the statute according to the ordinary and natural import of its language, unless a different meaning is clearly indicated by the context, without resorting to subtle or forced interpretation for the purpose of extending or limiting its operation. Chief Justice Marshall said that although the spirit of an instrument is to be respected not less than its letter, yet the spirit is to be collected chiefly from its words. In *Sturges v. Crowinshield*, 4 Wheat. 122, 202, 4 L. Ed. 529, 550, he declared: "It would be dangerous in the extreme,

to infer from extrinsic circumstances, that a case for which the words of an instrument expressly provide, shall be exempted from its operation. Where words conflict with each other, where the different clauses of an instrument bear upon each other, and would be inconsistent, unless the natural and common import of words be varied, construction becomes necessary, and a departure from the obvious meaning of words, is justifiable. But if, in any case, the plain meaning of a provision, not contradicted by any other provision in the same instrument, is to be disregarded, because we believe the framers of that instrument could not intend what they say, it must be one in which the absurdity and injustice of applying the provision to the case, would be so monstrous, that all mankind would without hesitation unite in rejecting the application." It is held in Maryland that a court is generally not at liberty to surmise a legislative intent contrary to the letter of the statute, or to indulge in the license of inserting or omitting words with the view of making the statute express an intent which is not evidenced in the original form. It is only when some imperative reason is found in the statute for enlarging or restricting its meaning that the court is justified in disregarding the natural import of its language. *Alexander v. Worthington,* 5 Md. 471, 485; *State Tax Commission v. Harrington,* 126 Md. 157, 166, 94 A. 537; *Darnall v. Connor,* 161 Md. 210, 219, 155 A. 894; *Tull v. Fitzgerald,* 167 Md. 429, 175 A. 216; *Bouse v. Hull,* 168 Md. 1, 176 A. 645; *State v. Christhilf,* 170 Md. 586, 185 A. 456; *State v. Fleming,* 173 Md. 192, 195 A. 392.

We must refuse, therefore, to restrict the meaning of the plain language of the Act of 1939, for otherwise we would be assuming legislative authority. It is obvious that the claim of the State Tax Commission would either give retrospective application to the Act or else frustrate the express desire of the Legislature that counterpart and supplemental instruments shall not be subject to the tax. Laws are generally enacted to regu-

late future conduct and establish the basis upon which rights are thereafter to be predicated; they are not usually designed to change the legal relation of closed transactions, especially if the change would interfere with antecedent rights. It is well settled that a statute will not be given a retrospective operation, unless its words are so clear, strong and imperative in their retrospective expression that no other meaning can be attached to them, or unless the manifest intention of the Legislature could not otherwise be gratified. *Appeal Tax Court of Baltimore City v. Western Maryland R. Co.*, 50 Md. 274, 294; *Vandiver v. Fidelity Savings Bank of Frostburg*, 120 Md. 619, 87 A. 1086; *Dryden v. Baltimore Trust Co.*, 157 Md. 559, 563, 146 A. 752; *Diamond Match Co. v. State Tax Commission*, 175 Md. 234, 240, 200 A. 365; *Union Pacific R. Co. v. Laramie Stock Yards Co.*, 231 U. S. 190, 34 S. Ct. 101, 58 L. Ed. 179. An amendatory Act takes effect, like any other legislative enactment, only from the time of its passage, and has no application to prior transactions, unless an intent to the contrary is expressed in the Act or clearly implied from its provisions. In re *St. Michael's Church of Atlantic City*, 76 N. J. Eq. 524, 74 A. 491, 494. The Act of 1939 does not contain any language showing an imperative import of manifest intention of the Legislature that its provisions shall operate retrospectively.

The contention of the State Tax Commission is not in accordance with the decisions of the courts in other States. In 1925 the Legislature of Kansas imposed a mortgage registration fee of 25 cents for each $100 of the principal amount of the debt secured by any mortgage. After the passage of the statute, the Union Pacific Railroad Company, which had placed a mortgage upon all its property in 1897 to secure a bond issue of $100,000,000, gave a supplemental mortgage to add after-acquired property as additional security for the debt. The statute contained a provision that no fee should be required for the recording of a mortgage given solely for the purpose of correcting or perfecting a previously

recorded mortgage, or of providing additional security, where the fee had been paid on the original mortgage. It was argued on behalf of the State of Kansas that if the Legislature had intended that no fee should be required for a supplemental mortgage where no tax had been paid on the original mortgage by reason of the fact that no tax was required by law at the time, it would have inserted the words "if any" in the statute, as the New York Legislature had done. Nevertheless, the Supreme Court of Kansas held that no fee was required for the supplemental mortgage. The court said: "If it had been the purpose of the Legislature to compel the payment of a registration fee for a mortgage supplemental to an original mortgage recorded before the Act was passed, the statute would naturally have described the mortgages which could be filed without registration as those supplemental to mortgages recorded after March 1, 1925." *Union Pacific R. Co. v. Stratemeyer*, 119 Kan. 8, 237 P. 873, 875.

It is our opinion that no tax is required by the Maryland Recordation Tax Act for recording the counterpart of the first mortgage of Potomac Electric Power Company, although no tax was required by law for recording the original mortgage in 1936. We, therefore, affirm the order of the court below reversing the State Tax Commission's order disallowing the claim for refund of the tax.

*Order of court affirmed.*