THE BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA ET AL., PLAINTIFFS, V. EDWARD GILLETTE ET AL., DEFENDANTS.

30 N. W. 2d 296

Filed December 26, 1947.    No. 32386

*Cline, Williams & Wright, Everett L. Randall, Robert*

*M. Armstrong, Bernard Stone,* and *Charles Ledwith,* for plaintiffs.

*Walter R. Johnson,* Attorney General, and *Leslie Boslaugh,* for defendants.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and LIGHTNER, District Judge.

SIMMONS, C. J.

The plaintiffs seek here a declaratory judgment giving an answer to this question: "Did the Sixtieth Session of the Nebraska State Legislature, 1947, by the enactment of Legislative Bill No. 2, approved June 11, 1947, particularly sections 51 and 58 thereof, * * * appropriate or not appropriate the proceeds arising by reason of the enactment of Legislative Bill No. 209, for use during the biennium ending June 30, 1949?"

Section 51, chapter 321, Laws 1947, page 1023, is:

"STATE INSTITUTIONAL AND MILITARY DEPARTMENT BUILDING FUND

"Appropriate all money from the General Fund that may be raised during the biennium by the special levy authorized by Legislative Bill 209, Sixtieth Session of the Nebraska State Legislature, 1947, and all interest thereon, for the erection, equipping, repairing or remodeling of buildings and plants, and for the purchase of land for buildings to be used as provided by said act."

The question arises because of an opinion by the Attorney General given to the State Treasurer that the money to be collected under LB 209 (Laws 1947, c. 236, p. 751) has not been appropriated by the above provision and will not be available for expenditure until it has been appropriated.

The position of the Attorney General is that LB 209 created a special fund as distinguished from the general fund; that section 51 appropriates money from the gen-

eral fund; that the special fund is not a part of the general fund; and that there is no appropriation of the special fund, and hence the section accomplishes nothing.

The position of the plaintiffs is that the words "from the General Fund" should be disregarded in the construction of section 51.

For reasons appearing hereafter, we are not in accord with either position.

That an appropriation by the Legislature is necessary in order to permit the expenditure of the money is not disputed.

In his budget message to the Legislature, Governor Griswold referred to the special levy that had been enacted four years prior thereto to make up a deficit in the permanent school fund. The pattern thus referred to undoubtedly suggested the basis for LB 209. He further stated that requests had come to him for appropriations for the construction of new buildings and for the repair of existing buildings at state institutions under the Board of Control and at the four State Teachers' Colleges, and referred to a study that he had caused to be made of the condition of these buildings, which study was to be filed with the Appropriations Committee. Legislative Journal 1947, p. 28.

Governor Peterson in his budget message on January 29, 1947, advised the Legislature that he was submitting a budget which was substantially reduced in amount from that submitted by Governor Griswold. He stated: "It should be explained that the major portion of these reductions represent buildings and repairs requested which, I feel, should be provided for through the creation of a special building fund on a long range basis." Legislative Journal 1947, p. 210. He followed this with a statement that for several years the state had been unable to give the funds required to the maintenance and expansion of state institutions; that it was neither logical nor economical to attempt to provide for repair and new building costs, session by session, nor to erect

new buildings all at one time; that it was wise to provide for a long-range building and repair program; that a bill providing for such plan had already been introduced by Senator Mueller; that he recommended its careful consideration; and that "If some such plan is not adopted, then it would be incumbent upon the Legislature to make provision in the appropriation bill for the items for buildings and repairs which I have eliminated." Legislative Journal 1947, pp. 211, 212. Later in discussing the Board of Control needs and Normal School needs he referred to the long-range program furnishing funds for buildings and repairs, and cautioned that "* * * appropriation must be made for urgently needed repairs and replacements * * *" if the long-range program was not adopted. Legislative Journal 1947, p. 212. This message indicates an executive view, transmitted to the Legislature, that needed funds for buildings and repairs should be made available presently as a result of the enactment of a bill, such as Senator Mueller had introduced, and, if not by such a bill, then by special appropriation, but available in any event.

LB 209 was introduced by Senator Mueller on January 27, 1947. As passed and approved by the Governor, it became chapter 236, Laws 1947, page 751.

Section 1 provided: "There is hereby created, for the use of the Board of Regents of the University of Nebraska, the Board of Control, the Board of Education of State Normal Schools and the Military Department, a fund, to be known as the 'State Institutional and Military Department Building Fund', to consist of the proceeds of a tax of one and one-tenth of a mill on the dollar valuation of the grand assessment roll of the state, which tax shall be levied in the year 1947 and annually thereafter for ten years; to and including the year 1956; which shall be supplemented by the addition thereto of one-third of the state's share of intangible taxes for each year."

Section 2 provided: "The proceeds of the tax herein authorized to be levied shall be expended by said boards, respectively, in the proportions hereinafter provided, as and when appropriated by the Legislature, for the erection, equipping, repairing or remodeling of buildings and plants, and for the purchase of land for buildings to be used in the administration, operation and maintenance of the institutions under the control or operation of said boards, respectively, and for the purchase of land and construction thereon of armories by the Military Department."

Section 3 provided: "The proceeds of one mill of said tax herein authorized to be levied shall be set aside as collected and credited to said respective boards, in the following proportions, to-wit: (1) Forty per cent thereof for expenditure by the Board of Regents of the University of Nebraska; (2) forty-five per cent thereof for expenditure by the Board of Control; and (3) fifteen per cent thereof for expenditure by the Board of Education of State Normal Schools. The proceeds of one-tenth of a mill of said tax shall be set aside as collected and credited to the Military Department for the purchase of land and construction thereon of armories. The proceeds of the share of the intangible tax, referred to in section 1 of this act, shall be set aside as collected and credited to said boards and the Military Department in the same proportion as the proceeds of said levy of one and one-tenth of a mill."

Section 4 provided: "Since an emergency exists, this act shall be in full force and take effect, from and after its passage and approval, according to law."

The act was approved April 12, 1947.

Section 27, article III, of the Constitution provides in part: "No act shall take effect until three calendar months after the adjournment of the session at which it passed, unless in case of emergency, to be expressed in the preamble or body of the act, the Legislature shall, by a vote of two thirds of all the members elected

to each House otherwise direct." The Legislative Journal shows that LB 209 was enacted by a vote of 37 to 2. Legislative Journal 1947, p. 1009.

By the enactment of LB 209, the Legislature clearly stated its purpose to initiate the program of betterment therein authorized. The vote shows that the intent was entertained by an overwhelming majority of the members. By the inclusion of the emergency clause, the Legislature evidenced its intent that the program be initiated immediately.

The next and logical step was for the Legislature to appropriate the funds with which to make that intent effective. The history of section 51 is that it first appeared as section 50 in LB 2, when the Committee on the Budget reported out its committee substitute for the original LB 2. It then was in the following language:

"Sec. 50.  STATE INSTITUTIONAL AND MILITARY DEPARTMENT BUILDING FUND All money that may be raised during the biennium by the special levy authorized by Legislative Bill 209 of the Sixtieth Session of the 1947 Legislature, and all interest thereon, for the erection, equipping, repairing or remodeling of buildings and plants, and for the purchase of land for buildings to be used as provided by said act."

In that language it was adopted by the Legislature on May 19, 1947. Legislative Journal 1947, p. 1564. On May 20, 1947, the Committee on the Budget adopted an amendment to this language which in turn was adopted by the Legislature on May 21, 1947. The amendment is as follows: "Amend page 52 of the bill, section 50, line 3 by striking the words 'All money' and inserting in lieu thereof the words 'Appropriate all money from the General Fund'." Legislative Journal 1947, p. 1638.

The section as amended (then Section 51) was enacted on final passage on June 6, 1947.

Disregarding for the moment the effect of the amendment, it is clear the Legislature intended to make funds available for the beneficial purposes of LB 209. Obviously, the Legislature did not intend by the amendment to nullify the purpose expressed in the original proposal. To accomplish that purpose the customary parliamentary method would be to strike the section. The question comes: What was the effect of the amendment?

Before going to that question we refer to Legislative Resolution No. 24, which was introduced in the Legislature on June 5, 1947, and adopted June 6, 1947, with 33 ayes, 0 nays, and 10 not voting. Legislative Journal 1947, pp. 1875, 1877. By whereas provisions that resolution referred to LB 209, stated that it merely provided the general policy to be followed and did not provide the details for carrying out the provisions of the act, and then resolved that the agencies named cause detailed plans and specifications to be prepared to carry out the building program authorized and the estimated cost thereof, and that such plans, specifications, and estimate of costs be filed with the clerk of the Legislature before the next regular session. The resolving part of the resolution refers only to the building program. The resolution clearly indicates a continuance of the legislative intent that this program be immediately undertaken, and an intent and understanding that funds for that purpose were to be available during the present biennium. Obviously, the cost of preparing plans and specifications are a part of the cost of the betterments involved. Obviously, that cost would naturally come from funds appropriated for that purpose. It may or may not be that the agencies involved could comply with the resolution by the use of other funds appropriated to them, but the resolution does not indicate any such requirement or intent. It cannot be successfully argued that on the very day the Legislature adopted the appropriation provision here involved, those

who voted for LB. 209 unanimously had a change of mind and (by a resolution which had been before them one day) expressed an intent to retract their legislative determination that an emergency existed and to limit the present benefits of the act to the preparation of plans, specifications, and estimated costs. Accordingly, we need not determine the extent to which a resolution may be used to amend or nullify a legislative act.

One further indication of legislative intent is manifest. Without referring to items in detail, a study of LB 2, as originally introduced and finally enacted, shows that approximately one and three-quarter million dollars in the budget recommended by Governor Griswold was specifically omitted from the budget recommended by Governor Peterson, and was not restored by the Legislature. Thus again, a legislative intent to have the money levied and authorized by LB 209 made immediately available is shown. It also appears that certain unexpended balances of funds appropriated to the Board of Control and the Board of Education of State Normal Schools for buildings and repairs were reappropriated to those institutions, but no additional funds were granted unless appropriated in section 51. It likewise appears that an appropriation was made for automatic sprinklers and fire escapes to be installed in buildings under the jurisdiction of the Board of Control —an appropriation made necessary by a report of the State Fire Marshal. This item was not included in either Governor Griswold's or Governor Peterson's budget messages and was obviously an emergency matter which the Legislature did not desire should be delayed until funds levied and authorized under LB 209 would be available. .

We now return to the question of the effect of the amendment hereinbefore recited and the construction of section 51. There is an ambiguity and uncertainty in the language used in section 51 arising from the wording of the amendment. That ambiguity and un-

certainty are removed when the amendment is considered in the light of an analysis of LB 209 and one statute which is the key to the answer of the problem here presented. The key is section 77-704, R. S. 1943.

The Attorney General argues that LB 209 created a special fund as distinguished from the general fund. We are in fact here dealing with three funds: The "State Institutional and Military Department Building Fund" is created by LB 209. That fund, however, is made up of two other funds specifically referred to in section 1 of the act: (1) The proceeds derived from the special tax; and (2) one-third of the state's share of the intangible tax for each year. LB 209 authorized the one-and-one-tenth-mill tax levy. The intangible tax levy had already been authorized. §§ 77-701 to 77-703, inclusive, R. S. 1943.

Section 2 of LB 209 directs the expenditure of the proceeds of the tax authorized to be levied by LB 209, when appropriated by the Legislature, for the purposes therein expressed. The section makes no reference to the intangible tax funds.

Section 3 of LB 209 directs that the tax authorized therein shall be set aside and credited to the agencies named. It likewise directs that the proceeds of the share of the intangible tax shall be set aside and credited to the agencies named.

By section 77-704, R. S. 1943, one-sixth of the total intangible tax collected in the various taxing districts of the state shall be apportioned to the "state general fund." It obviously is that share that is referred to in LB 209. So far as LB 209 is concerned, the one-third of the state's share of the intangible tax there set aside and credited remains in the general fund. It follows that the Attorney General's premise that there is no money in the general fund involved in LB 209 is not sustained.

We have not overlooked the language in section 1 that the proceeds of the one-and-one-tenth-mill tax

"shall be supplemented by the addition thereto" of a part of the state's share of the intangible tax fund. We recognize that standing alone it might rationally be argued that the Legislature thereby intended to merge the two funds into the one fund. But the words do not stand alone. As just pointed out in section 3, the proceeds of the one-and-one-tenth-mill tax fund are treated as separate and distinct from the proceeds of the share of the intangible tax. The intangible tax fund remains a separate fund. It follows that, to fully appropriate the "State Institutional and Military Department Building Fund" for the biennium 1947-1949, the Legislature was required to appropriate the designated part of the state's share of the intangible tax from the general fund as well as to appropriate the fund raised by the one-and-one-tenth-mill levy.

We now return to the proposal originally adopted by the Legislature and the amendment adopted resulting in section 51.

The original provision was: "All money that may be raised during the biennium by the special levy authorized by Legislative Bill 209 * * *." Obviously, this language purports to appropriate only that fund raised by the special levy. The intangible tax money in the general fund referred to in LB 209 is not included by that language.

By the amendment "all money" was stricken out and "appropriate all money from the General Fund" was inserted. As the Attorney General argues, this appropriates money "from the General Fund." However, the amendment does not limit the appropriation to money in the general fund. Had the Legislature so intended they naturally would have stricken out the reference to the money raised by the special levy. By leaving that language in the section, the Legislature clearly demonstrated an intent to appropriate both funds rather than substitute one fund for the other. The Legislature also designated the uses for which the in-

tangible tax money was to be used—uses not defined by specific language in LB 209, but defined in section 51. In the light of this analysis then, section 51 may be construed in this wise, "appropriate all money from the general fund * * * authorized by Legislative Bill 209" for the purposes therein stated, and "appropriate all money * * * that may be raised during the biennium by the special levy authorized by Legislative Bill 209" for the purposes therein stated.

Now, putting the two separate appropriations into one, we have "appropriate all money from the General Fund *and all money* that may be raised during the biennium by the special levy authorized by Legislative Bill 209" etc. Thus, by the addition of the word "and" and by repeating "all money" the legislative purpose expressed in LB 209 and the legislative intent in section 51 are clearly expressed and determined. The entire legislation from beginning to end thus follows a common pattern and purpose. The inclusion of section 51 under the title in the bill of "Specific Funds" is consistent with this analysis.

May the emphasized words "and all money" be supplied? The rule is that words may be supplied by the courts in construing a statute where that is necessary to complete the sense thereof and give effect to the intention of the Legislature manifested therein. This rule is especially applicable where it is necessary to do so to prevent the law from becoming a nullity. 50 Am. Jur., Statutes, § 234, p. 222; 59 C. J., Statutes, § 593, p. 992; Annotations, 3 A. L. R. 404, and 126 A. L. R. 1325.

It, accordingly, is our judgment that the Legislature by the enactment of section 51 of LB 2 (Laws 1947, chapter 321, pages 963, 1023) appropriated all the money that may be raised during the biennium by the special levy authorized by LB 209, and also the one-third of the state's share of the intangible taxes for each year for the purposes expressed in said section 51.

JUDGMENT ACCORDINGLY.