BIRMINGHAM, ET UX. *v.* BOARD OF PUBLIC
WORKS OF MARYLAND, ET AL.
[No. 388, September Term, 1967.]

*Decided per curiam on March 7, 1968.*

*Opinion filed April 3, 1968.*

The cause was argued before HAMMOND, C. J., and HOR-NEY, BARNES, FINAN and SINGLEY, JJ.

*Everett L. Buckmaster,* with whom were *George W. White, Jr.,* and *Buckmaster, White, Mindel & Clarke* on the brief, for appellants.

*Frank A. DeCosta, Jr., Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellees.

Amicus curiae brief filed by Mercy Villa, Inc. *Francis X. Gallagher* and *Joseph G. Finnerty, Jr.,* on the brief.

Amicus curiae brief filed by Christ Lutheran Church. *Mylander & Atwater, Charles C. W. Atwater* and *David A. Carney,* on the brief.

SINGLEY, J., delivered the opinion of the Court.

By chapter 652 of the Laws of Maryland 1966 (the Nursing Home Loan Act of 1966, hereafter sometimes referred to as "the Act"), the General Assembly of Maryland authorized the State to incur an indebtedness of $3,500,000 to supplement federal grants made or to be made to the Maryland State Depart-

ment of Health for the construction and equipment of public and non-profit nursing homes.

On 25 September 1967 the appellants, in their capacity as taxpayers, filed a bill of complaint in the Circuit Court of Baltimore City against the Board of Public Works and others, challenging the validity of the Act, and asking that the appellees be enjoined from taking any action thereunder. In the court below, the appellants contended that the Act is unconstitutional and void because: (1) the Act fails to provide for the collection of an annual tax sufficient to pay the interest on the debt and to discharge the principal of the debt within 15 years; (2) the Act results in the establishment of religion or prohibits the free exercise thereof; (3) the Act discriminates in favor of religious organizations to the detriment of non-profit organizations; and (4) the title of the Act is defective.

The lower court, after a careful consideration of all of these contentions, dismissed the bill of complaint. From the decree dismissing the bill, this appeal was taken. The appellants, in their brief and in argument, make the same points which were argued below and additionally contend that the chancellor was in error when he admitted in evidence the regulations promulgated under the Act by the State Department of Health and certain related correspondence.

It is our view that the Act is invalid for the reason that it failed to provide for the collection of an annual tax sufficient to pay the principal of and interest on the debt. Accordingly, we need not reach, nor do we pass upon, the other contentions raised by the appellants.

The legislative history of the Act is not only interesting, but necessary to an understanding of the result which we reach. Chapter 643 of the Laws of Maryland 1961, the Nursing Home Loan Act of 1961, authorized the borrowing of $1,500,000 to supplement federal grants made to the State Department of Health for the construction and equipping of nursing homes. Section 7 of the 1961 Act reads as follows:

"* * *, That until all of the interest on and principals of any Certificates issued under this Act have been paid in full, there is hereby levied and imposed an annual

State tax on each One Hundred Dollars ($100.00) of assessable property at the rate to be determined in the following manner: On or before December 1, 1961, and on or before December 1st of each calendar year thereafter, the Board of Public Works shall certify to the governing bodies of each of the Counties and of Baltimore City the rate of State tax on each One Hundred Dollars ($100.00) of assessable property *necessary to produce revenue to meet all interest and principal which will* be payable to the close of the next ensuing calendar year on all Certificates theretofore issued or theretofore authorized by resolution of the Board of Public Works to be issued, and the governing bodies of each of the Counties and Baltimore City shall forthwith levy and collect such a tax at such a rate." (Italics added).

When the 1961 loan funds were exhausted, a new bill was prepared for introduction in the 1966 session of the General Assembly to authorize a new state loan of $3,500,000 to continue the program. The typed version of the 1966 Act was prepared and given to the Speaker of the House of Delegates for introduction. The text of the 1966 Act was substantially similar to that of the 1961 Act, and § 7 was identical, except that the italicized words *"necessary to produce revenue to meet all interest and principal which will"* were omitted, the dates were changed to May 1, 1967, and the word "fiscal" was substituted for the word "calendar."

Art. III, § 34 of the Maryland Constitution provides, in part:

"No debt shall be hereafter contracted by the General Assembly unless such debt shall be authorized by a law providing for the collection of an annual tax or taxes sufficient to pay the interest on such debt as it falls due, and also to discharge the principal thereof within fifteen years from the time of contracting the same; * * *".

The appellees take the position that the omission was an inadvertent one; that there is no uncertainty as to the nature of

the omission; and that the interpretation of the omitted words by judicial construction would neither alter nor change any substantive rights. They also point out that it has been customary, at least since 1953, for the General Assembly not to levy a specific tax for each bond issue, but instead to authorize the Board of Public Works to certify to the political subdivisions what tax is needed each year to support the entire State debt and to require the subdivisions to collect the tax. The language of § 7, they say, is (except for the 12 words omitted) that customarily used by the Legislature and approved by this Court in *McKeldin v. Steedman*, 203 Md. 89, 98 A. 2d 561 (1953), and there can be no doubt as to the exact words to be interpolated by us.

We do not find this persuasive. While we have held that where the true legislative intent can be ascertained, it will prevail over precise grammatical construction or literal intent, *State v. Petrushansky*, 183 Md. 67, 36 A. 2d 533 (1944) ; *Clark v. Tawes*, 187 Md. 195, 49 A. 2d 463 (1946), in the case before us, however, the appellees ask us to go much further. As Mr. Justice Brandeis, speaking for the Supreme Court, said in *Iselin v. U. S.*, 270 U. S. 245 (1926) :

> "What the Government asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted presumably by inadvertence, may be included within its scope. To supply omissions transcends the judicial function. * * *." *Id.* at 251.

This Court has consistently taken the same view. *Redwood v. Lane*, 194 Md. 91, 69 A. 2d 907 (1949) was an attack on the validity of the Act authorizing the General Public School Construction Act of 1949 which had been enacted without a recording of the yea and nay votes as required by Constitution, Art. III, § 28. Judge Collins, speaking for the Court, said, 194 Md. at 102-03 :

> "Article 8 of the Declaration of Rights of this State specifically provides: 'That the Legislative, Executive and Judicial powers of Government ought to be for-

ever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other.' This language is clear and explicit. *Niles on Constitutional Law,* page 19. *Beasley v. Ridout,* 94 Md. 641, 52 A. 61. Judge Earle in the case of *Crane v. Meginnis,* 1 G. & J. page 463, aptly says at page 472, 19 Am. Dec. 237: 'The Constitution of this State, composed of the Declaration of Rights and form of government, is the immediate work of the people, in their sovereign capacity, and contains standing evidences of their permanent will. It portions out supreme power, and assigns it to different departments, prescribing to each the authority it may exercise, and specifying that from the exercise of which it must abstain. The public functionaries move then in a subordinate character, and must conform to the fundamental laws or prescripts of the creating power. When they transcend defined limits, their acts are unauthorized, and being without warrant, are necessarily to be viewed as nullities.' Although we might desire to make this record for the Senate in order to obviate the difficulties presented by declaring this act invalid, we have no power to do so.

"If the Courts could make records for the Legislature no lawyer in determining whether a statute was legally enacted could rely upon the printed statutes and the Legislative records. * * *."

· *Redwood v. Lane* is consistent with the reasoning of the earlier case of *Hammond v. Haines,* 25 Md. 541, 562, 90 Am. Dec. 77 (1866):

" 'Law, (as has been most aptly defined) is the result of the legitimate action of legislative power.' The Constitution wisely distributes the powers of government among several and distinct departments, and the limits of these cannot be extended, or an encroachment of one upon the other permitted, without a violation of the social compact and a derangement of the social or-

der. The General Assembly, composed of the Senate and House of Delegates, is in this State the only law-making power. The popular will is not to be disregarded, but that, always in theory and generally in practice, is reflected by the representatives of the people in the legislative department of the government. With them is lodged the power of making laws for the government of the people, and the due responsibility of the representative to his constituents is best maintained, and stable and wholesome legislation secured, by avoiding judicial refinements by which this power is extended to any whom the Constitution has not invested with legislative action."

Nor have we the power to correct an omission in the language of a statute, even although the omission was the obvious result of inadvertence. As Judge Delaplaine, who wrote the Court's opinion in *State Tax Comm. v. Potomac Electric Power Co.*, 182 Md. 111, 32 A. 2d 382 (1943) and the majority opinion in *Rogan v. B. & O. R. R. Co.*, 188 Md. 44, 52 A. 2d 261 (1947), said in the *Potomac Electric* case:

"It is held in Maryland that a court is generally not at liberty to surmise a legislative intent contrary to the letter of the statute, or to indulge in the license of inserting or omitting words with the view of making the statute express an intent which is not evidenced in the original form." 182 Md. at 116.

In *Rogan,* Judge Delaplaine explained the reason for the rule, 188 Md. at 54:

"* * * Interpolation of words, to make a statute include matters which the Legislature did not expressly include, invades the function vested solely in the Legislature, however plausible may be the conjecture that those matters were within the legislative purview.

"Even though a certain provision, which has been omitted from a statute, appears to be within the obvious purpose or plan of the statute, and to have been omitted merely by inadvertence, nevertheless the court

is not at liberty to add to the language of the law; and the court must hold that the Legislature intended to omit the provision, however improbable that may appear in connection with the general policy of the statute. *Scaggs v. Baltimore & Washington R. Co.,* 10 Md. 268, 277."

The appellees argue that the case before us does not come within the rule of *Potomac Electric* and *Rogan* since the 12 words inadvertently omitted involve no change in substantive rights, but are merely of a technical nature, designed to adopt the mechanics of the scheme of taxation approved in *McKeldin v. Steedman, supra.* The appellees also urge that there is ample authority to justify us in supplying words omitted by clerical error from a statute and cite *Sutherland on Statutory Construction,* Vol. 2, § 4924 at 455 (3rd Ed.); *Williams v. Linn,* 108 Ga. App. 629, 133 S. E. 2d 892 (1963); *City of Rutland v. Keiffer,* 205 A. 2d 400 (Vt. 1964); *Dostmann v. Zoning Board of Appeals,* 143 Conn. 297, 122 A. 2d 19 (1956); *McCullen v. State,* 63 So. 2d 856 (Miss. 1953); *Board of Regents v. Gillette,* 149 Neb. 56, 30 N. W. 2d 296 (1947); *Kos v. State,* 31 N. E. 2d 50 (Ind. 1941).

Although the case for the appellees was thoroughly briefed and ably presented, we cannot adopt these contentions. We concede that it is unlikely, but can envision a possibility, that the words omitted from Chapter 652 of the Laws of Maryland 1966 might have adopted a scheme of taxation different from that followed in *McKeldin v. Steedman, supra.* Regardless of what the law may be elsewhere, it is well settled in Maryland that the courts cannot, as Judge Delaplaine said in *Rogan, supra,* 188 Md. at 54 "[invade] the function vested solely in the Legislature, however plausible may be the conjecture that [the matter was] within the legislative purview."

For the reasons herein given, we passed the per curiam order of 7 March 1968, reversing the decree appealed from with costs and holding Chapter 652 of the Laws of Maryland 1966 invalid and of no effect.