## STATE OF MARYLAND *v.* FRED
## F. BLANKEN

[No. 13, September Term, 1971.]

*Decided March 29, 1971.*

The cause was argued before MURPHY, C.J., and MORTON, ORTH, MOYLAN, and POWERS, JJ.

*Edward Borgerding* and *Thomas J. Kenney, Jr., Assistant Attorneys General,* with whom were *Francis B. Burch, Attorney General, Gary Melick, Assistant Attorney General,* and *Raymond G. Thieme, State's Attorney for Anne Arundel County,* on the brief, for appellant.

*Jules Fink* for appellee.

MURPHY, C.J., delivered the opinion of the Court.

On November 20, 1970, appellee Blanken was charged with the motor vehicle offense of failing to yield the right-of-way in violation of Maryland Code (1967 Repl. Vol. and 1969 Supp.), Article 66½ (Motor Vehicles), Section 232. Found guilty of this offense in the People's Court of Anne Arundel County on December 14, 1970, Blanken appealed to the Circuit Court for Anne Arundel County. He there moved to dismiss the charge on the ground that under Chapter 534 of the Acts of 1970, Article 66½ was repealed effective June 1, 1970, that the reenactment of the Article did not become effective under that Act until January 1, 1971, and, consequently, Section 232 under which he was convicted simply did not exist on November 20, 1970, the day on which he was charged with violating that Section. The lower court found merit in Blanken's argument and dismissed the charge; in doing so, it concluded that the State had no motor vehicle laws in effect from June 1, 1970 to January 1, 1971, a period of seven months. We granted the State's petition for a writ of certiorari to review the decision of the Circuit Court for Anne Arundel County.[1] Immediately following oral argument in the case, we passed a per curiam

---

1. See Article 5, Section 21 of the Code.

order reversing the judgment of the lower court and declaring "that Article 66½ of the Annotated Code of Maryland (as found in 1967 Replacement Volume, 1969 Supplement and 1970 Interim Supplement), repealed by Chapter 534 of the Acts of 1970, was effective up to the time of taking effect of the new Article 66½ enacted by that same chapter to stand in its place." We now give our reasons for so concluding.

Chapter 534 of the Acts of 1970 accomplished a complete revision of the motor vehicle laws of this State. It did so (a) by expressly repealing Article 41, Section 59B of the Code, dealing with the State's acceptance of the benefits of the Federal Highway Safety Act of 1966, (b) by expressly repealing Article 66½ as it then existed, and (c) by enacting "in lieu thereof" a new Article 66½ "to stand in the place of the Article so repealed * * *." As enacted by Chapter 534, the new Article 66½ was divided into nineteen subtitles. Section 19-107 thereof, entitled "Time of taking effect," provided:

"This *article* shall take effect from and after the 1st day of January, 1971, except for those provisions hereof as to which a different effective date is specifically provided." (Emphasis supplied.)

The lower court was of the view that because the Legislature expressly provided in Section 19-107 for an effective date of January 1, 1971 for "This article," meaning the newly enacted Article 66½, but did not expressly specify an effective date for the repeal of the former Article 66½, the repeal became effective on June 1, 1970 in accordance with the provisions of Section 31 of Article 3 of the Maryland Constitution, which reads:

"No Law passed by the General Assembly shall take effect until the first day of June, next after the Session, at which it may be passed, unless it be otherwise expressly declared therein."

The court reasoned that even if the Legislature intended that the effective date of the repeal of former Article 66½ be January 1, 1971 so as to coincide with the effective date of the new Article 66½, its failure expressly to so provide constituted an omission which the court had no power to supply without violating the principles of *Birmingham v. Board of Public Works of Maryland*, 249 Md. 443. In that case it appeared that twelve words were inadvertently omitted from a statute authorizing the State to incur a certain debt; the effect of the omission was to render the statute unconstitutional on its face. The Court of Appeals indicated that the question before it did not concern a construction of the statute, nor did it involve the issue whether true legislative intent should prevail over precise grammatical construction or literal intent. The question before it, the court indicated, involved the principle whether the court was empowered to enlarge upon the statute by including language presumably omitted by inadvertence. In refusing to supply the missing language by judicial construction the court referred to a number of its earlier cases concerning application of the doctrine of separation of powers; it held that as it could not invade the function of the Legislature, it had no power to correct an omission in the language in a statute, even though the omission was the obvious result of inadvertence.

We think it clear beyond any question that the Legislature did not intend to repeal former Article 66½ effective June 1, 1970, and thus leave the State without a motor vehicle code until January 1, 1971. Appellee Blanken agrees that the Legislature intended *no such result* but claims that we are powerless to do anything about it under *Birmingham*. We think otherwise. Unlike *Birmingham*, the present case does not involve the question of adding language to a statute inadvertently omitted by the Legislature, or of enlarging upon the words therein contained; rather, it simply involves a construction of the provisions of Chapter 534 to ascertain its effective date.

It is true, of course, that under Section 31 of Article 3 of the Maryland Constitution, an Act of the General Assembly automatically takes effect on the first day of June next following its passage "unless it be otherwise expressly declared therein." A review of Chapter 534 in its entirety plainly reveals that the Legislature did, within the sense of the constitutional provision, expressly declare its intention that the repeal of former Article 66½ and enactment of new Article 66½ take effect simultaneously on January 1, 1971. The title of the Act expressly provided that the new Article 66½ was being enacted "in lieu" of the old Article 66½, and was "to stand in the place of the Article so repealed." That the Legislature intended the old Article 66½ to remain operative until the effective date of the new Article 66½ is made perfectly plain in a number of sections of the new Article where, in providing for the transition between the old and new Articles, it is explicitly stated, or implicitly indicated, that the old Article 66½ remained in effect until January 1, 1971.[2] Further unmistakable evidence of the legisla-

---

2. "§ 2-301. The department of the government of this State known as the 'Department of Motor Vehicles' *is continued in existence.*" (Emphasis added.)
"§ 5-101. (c) Every person who holds a valid license as a dealer, used car dealer, motorcycle dealer, trailer dealer or semi-trailer dealer issued under Article 66½ of this Code *as said article was in effect on the day prior to the effective date of this part* may continue to carry on or conduct business under the license until the expiration, suspension, revocation, or cancellation thereof, but in no case after April 30, 1971." (Emphasis added.)
"§ 5-301. (b) Every person who holds a valid license as a salesman issued *under Article 66½ of this Code as it was in effect on the day prior to the effective date of this part* may continue to carry on or conduct the activities or employment permitted under the license until the expiration, suspension, revocation, or cancellation thereof, but in no case after April 30, 1971." (Emphasis added.)
"§ 6-110. (b) The holder of an operator's, chauffeur's or special chauffeur's license, *issued prior to January 1, 1971,* may convert and renew such license to a Class D license any time within sixty days of expiration of same.
"(c) The holder of an operator's, chauffeur's or special chauffeur's license *issued prior to January 1, 1971,* may convert and renew such license to either a Class A, Class

tive declaration that former Article 66½ continue in effect until the effective date of new Article 66½ is found in the provisions of Section 2 of Chapter 534. It was there expressly provided that any motor vehicle laws enacted at the same 1970 session of the General Assembly which amended, changed, or added to old Article 66½ "shall prevail over anything inconsistent therewith in this Act;" that "all such separate acts shall be effective according to the legislative intent," and should be "incorporated into and codified with the provisions of this Act if such incorporation and codification are reasonably possible." It was the manifest purpose of this Section to permit amendments to former Article 66½ until January 1, 1971, a purpose that could not be achieved unless that Article remained operative until the new Article became effective on that date.

Against such a background it is obvious that the legislative provision in Section 19-107 of the Act that "This article" take effect January 1, 1971 was intended to and did include and incorporate the repeal of former Article 66½.[3] That which necessarily is implied in a statute has been held as much a part of it as that which is expressed. *Chillum-Adelphi Vol. Fire Dept. v. Board,* 247 Md. 373;

---

B or Class C license within sixty days of expiration of same. * * *

"(d) Conversion of Motorcycle License to Class E License. The holder of a motorcycle license *issued prior to January 1, 1971,* may convert and renew such license to a Class E License within sixty days of expiration of same." (Emphasis added.)

"§ 6-401. (b) The point system *heretofore in effect,* as established by the commissioner, shall remain in effect except insofar as it is inconsistent with the provisions of this part, until modified or repealed by the commissioner." (Emphasis added.)

"§ 19-104. This article shall not have a retroactive effect and shall not apply to any traffic accident, to any cause of action arising out of a traffic accident or judgment arising therefrom or to any *violation of the motor vehicle laws of this State, occurring prior to the effective date of this article.*" (Emphasis added.)

3. In not too dissimilar settings, the word "Act," used in a legislative enactment, has been held synonymous with the word "Article." *See Jones v. South Carolina State Highway Dept.,* 146 S.E.2d 166 (S. C.) ; *Deposit Bank v. Daviess County,* 39 S. W. 1030 (Ky.).

*Shapiro v. Baltimore*, 230 Md. 199; *Restivo v. Princeton Construction Co.*, 223 Md. 516. We thus conclude that the Legislature was not silent as to the effective date of the repeal of former Article 66½; it expressly provided, in effect, that the effective date was January 1, 1971.

To hold as the lower court did is not only to construe Chapter 534 in a manner wholly foreign to the expressed intention of the Legislature, but to give birth to a statutory monster of such horrendous proportions as would, among other dire consequences, likely unbalance the current State budget and place the State in a paper position of technical insolvency. The revenues generated by the provisions of Article 66½ for the period from July 1, 1970 to June 30, 1971 were appropriated through Chapter 100 of the Acts of 1970—the State Budget Bill—to support various critical governmental functions and fund vital State agencies. Had the Legislature, by Chapter 534, intended to cause a seven month lapse in the operation of the motor vehicle laws, it obviously would not have appropriated motor vehicle revenues for this period through the Budget Bill since none lawfully could have been collected.[4] But no delineation is required of the numerous chaotic consequences that would follow from a determination that for seven months in 1970, Maryland was without a motor vehicle code.[5] It is enough to say that if such an interpretation of Chapter 534 is possible, a doubt or ambiguity necessarily exists as to its effect or meaning justifying application of the principle of statutory construction that permits the court to consider, ascertain, and give effect to the real intention of the Legislature. *See Clerk v. Chesapeake Beach Park, Inc.*, 251 Md. 657;

---

4. According to the Attorney General, approximately $40,000,000 in revenue was produced under Article 66½ for the seven month period from June 1, 1970 to January 1, 1971.

5. Such a startling result, had it been intended, could in no event have been constitutionally masked under the title appended to Chapter 534; the title would be declared deceptively misleading under Article 3, Section 29 of the Maryland Constitution. *See also Buck Glass Co. v. Gordy*, 170 Md. 685, indicating that a restriction in the title must either confine the operation of the Act to conform to that description, if such a construction is possible, or render the Act void to the extent of the conflict.

*Domain v. Bosley,* 242 Md. 1; *Zebron v. American Oil Co.,* 10 Md. App. 308. In so doing, we are guided by the rule that statutes are to be construed reasonably and with reference to the purpose to be accomplished, *Walker v. Montgomery County Council,* 244 Md. 98; that a statute should be so construed that all its parts harmonize with each other and render them consistent with its general object and scope, *Maguire v. State,* 192 Md. 615; and that in construing a statute the court may consider the consequences of a particular construction and should adopt one that will prevent absurd or unjust consequences, with the real legislative intention prevailing over the intention indicated by the literal meaning, *Saul Co. v. West End Park,* 250 Md. 707; *Sanza v. Board of Censors,* 245 Md. 319; *Truitt v. Board of Public Works,* 243 Md. 375. Considering Chapter 534 in its entirety in light of these principles, we think it wholly apparent that the Legislature intended to enact a systematic, continuous, and comprehensive revision of the motor vehicle laws of this State, the last thing in its mind being to create a seven month lapse in the regulatory process while effecting the transition between the provisions of the old and new Article 66½. *Compare State v. Petrushansky,* 183 Md. 67.

It was for these reasons that we previously announced in our per curiam order that former Article 66½, repealed by Chapter 534 of the Acts of 1970, "was effective up to the time of taking effect of the new Article 66½" on January 1, 1971.

> *Judgment reversed; case remanded for a new trial; costs to be paid by appellant.*